**Hyman DUBY, Plaintiff-Appellant,**

v.

**AMERICAN COLLEGE OF SURGEONS, Defendant-Appellee.**

**No. 71–1436.**

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1972.

Decided Oct. 11, 1972.

Walter H. Moses, Jr., and Raymond J. Smith, Chicago, Ill., Neil L. Chayet, Boston, Mass., for plaintiff-appellant.

Paul G. Gebhard, John J. Cassidy, Jr., and Thomas L. O'Brien, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, PELL and HAMLEY,* Circuit Judges.

PELL, Circuit Judge.

Plaintiff Hyman Duby, a Doctor of Medicine in his early sixties who specializes in surgery but does not have Board certification in surgery, here seeks review of the decision of the defendant American College of Surgeons to expel him. The district court, after a combined hearing on the defendant's motion for summary judgment and trial on the merits, granted summary judgment for the College. On this appeal, Dr. Duby is seeking alternatively to have the judgment reversed and the case remanded for a more thorough hearing into the merits or to secure the issuance of a permanent injunction against the College's efforts to expel him.

There is substantial accord between the parties as to the relevant facts. In 1940 Dr. Duby, a resident of Massachusetts, became a Fellow in the College. He remained a member in good standing until 1971 when, as a result of an inquiry into certain surgical and patient care procedures employed by him, the College reached a decision to expel him. At the time the investigation which led to this decision began, Dr. Duby was affiliated with four Massachusetts hospitals. He had never before been investigated or disciplined for his professional conduct.

* Circuit Judge Frederick G. Hamley of the Ninth Circuit is sitting by designation.

The College, an Illinois not-for-profit corporation, is a voluntary professional organization of surgeons with approximately 30,000 members in the United States and Canada. The express purpose of the College is to "establish and maintain an association of surgeons . . . for the benefit of humanity by advancing the science of surgery and the ethical and competent practice of its art." Membership in either the College or its companion association, the American Board of Surgery, Inc., is frequently required by accredited hospitals. Expulsion from the College, therefore, carries with it substantial impairment of the expelled member's ability to pursue his profession.

Early in March 1969, as a result of questions by the medical staff of Jordan Hospital in Plymouth, Massachusetts, concerning Dr. Duby's treatment of patients, the hospital's Executive Committee temporarily suspended plaintiff's surgical privileges and initiated a review of some of his procedures. Following the determination that plaintiff's care of patients was inadequate, the hospital's Credentials and Executive Committees entered into a voluntary agreement with Dr. Duby by which his practice was limited to general surgery. That agreement contained the additional requirement that a Board-certified surgeon assist the plaintiff in all major operations and post-operative care.

On April 28, 1970, the medical staff of Jordan Hospital voted to allow the plaintiff to continue a restricted practice of surgery at the hospital but requested an investigation into his conduct by the College. In response to this request, the College sent a committee of three Fellows to the hospital to conduct the formal inquiry. On August 19, 1970, the committee met with the hospital's Credentials Committee, the president of its medical staff, the hospital administrator and the plaintiff. As a result of that meeting and the investigation which followed, the committee issued a report to the hospital in which it found that the hospital's curtailment of Dr. Duby's surgical practice was justified under the circumstances. In addition, with some reservation as to its authority to do so, the committee recommended that Dr. Duby be censured by the Regents of the College for having failed to live up to his agreement with the Credentials and Executive Committees. No recommendation of other disciplinary action by the College was made.

Subsequent to its receipt and review of the committee's report, the College decided to initiate on its own behalf a formal examination of Dr. Duby's professional conduct. Pursuant to the bylaws of the College, the matter was referred to the College's Central Judiciary Committee for "consideration of disciplinary action." Written notice of the impending disciplinary proceedings was sent to Dr. Duby on October 29, 1970. That notice informed the plaintiff that, *inter alia*, he was the subject of a disciplinary investigation into his handling of five surgical cases which were identified by the name of the patient, the hospital number and the surgical procedure performed.[1] The notice further informed Duby of the date and location of the hearing and invited him to be present "in person or by [his] representative" and to submit any evidence he deemed necessary to his defense.

Dr. Duby appeared in person at the hearing but without legal counsel. He voluntarily discussed with the members of the Central Judiciary Committee each of the cases enumerated in the notice and apparently had no objection to extending the inquiry into at least two other cases not specified in the notice. During the discussion, Dr. Duby admitted having engaged in surgical procedures that did not comport with accept-

---

1. The notice also stated that the Central Judiciary Committee would consider allegations that Dr. Duby had failed to fulfill his obligations under the agreement he had made with the hospital and that he had left seriously ill patients without adequate surgical coverage.

ed standard practices.[2] At no time during the hearing did he request legal counsel or ask for a continuance for the purpose of obtaining such counsel. Further, he did not object to the manner in which the hearing was being conducted. Indeed, it is clear that the Central Judiciary Committee permitted Dr. Duby to offer any explanation of his professional procedures that he desired. There is no indication that the Committee would have precluded his offering any other evidence pertaining to the matter if he had so chosen.

At the conclusion of the hearing, the Central Judiciary Committee voted to recommend to the Board of Regents of the College that Dr. Duby be offered the choice either of resigning his fellowship or facing formal expulsion by the College.

On December 28, 1970, plaintiff was informed of this recommendation by a letter which also notified him that he had the right to appear before the Board of Regents "in person or by [his] representative" on February 6, 1971, to state his objections to the recommendation of the Central Judiciary Committee. Plaintiff appeared before the Board, this time accompanied by legal counsel, but declined an invitation to make a statement or to introduce evidence in his defense. Again, neither plaintiff nor his counsel objected to the procedures used in conducting the investigation and hearings. Rather, it appears that plaintiff consciously chose, as a matter of strategy, to ignore any possible objection to the procedures and to appeal to

the Board for a less severe sanction than expulsion from the College.

Rejecting plaintiff's plea for clemency, the Board voted to adopt the recommendation of the Central Judiciary Committee. Plaintiff was notified on February 12, 1971, that he could either resign his fellowship or face formal expulsion. This written notice detailed the grounds for the Board's decision by referring to the plaintiff's handling of the five cases named in the October 29th notice and, as an independent alternative ground, to his failure to arrange for adequate coverage for seriously ill patients during his absence.

Faced with that unhappy choice, Dr. Duby sought immediate injunctive relief from the district court. There, the district judge, applying Illinois law under diversity jurisdiction, denied plaintiff's motion and granted the defendant College's motion for summary judgment. The court held that it had no power to interfere with the expulsion of a member of a private, voluntary association where such expulsion complied with the procedures established by the association's bylaws and articles of incorporation.

Dr. Duby argues that the district court erred in construing Illinois law to limit judicial inquiry to the question of whether a particular expulsion was accomplished pursuant to the organization's bylaws and articles. It is appellant's position that "rudimentary due process" principles govern expulsion from private associations where, as here, expulsion carries with it a substantial

---

2. Plaintiff does not here dispute the accuracy of the Committee's findings with regard to his conduct. In his discussions with the Committee, he admitted that within a two-year period he had (1) performed a radical mastectomy without a prior biopsy and that post-operative examination had revealed no carcinoma, (2) performed a total hysterectomy, bilateral salpingo-oophorectomy and appendectomy on the basis of a Type III Pap Smear without a prior biopsy, (3) performed a simple mastectomy in the outpatient department on a 91-year-old patient who was subsequently required to be admitted to the hospital, (4) ordered only one series of chemical tests on a patient following a serious operation for carcinoma of the colon when daily tests should have been requested and the patient subsequently died, and (5) failed to arrange adequate post-operative care for a cholecystectomy patient who had to be readmitted to the hospital for generalized peritonitis and was later transferred to a larger hospital for repair of her surgically severed common bile duct.

impairment of the member's ability to pursue his livelihood.[3]

Although both parties have placed major emphasis on the question of whether Illinois courts apply "rudimentary due process" principles to expulsions from private, voluntary organizations, we find it is unnecessary for us to reach that question since it is apparent from the record that, regardless of whether such due process protections were required or not, they were, in fact, afforded to Dr. Duby.[4]

■ In judging a particular case against the external standard of fairness mandated by due process, whether pursuant to federal law or state common law authorities, one is immediately confronted by the realization that due process is an amorphous concept of less than facile application. There are no rigid or universal rules determining what constitutes procedural due process. *Cf.* Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 894–895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Indeed, the dictates of that flexible concept vary substantially depending upon the nature of the proceedings. As the Supreme Court observed in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960), where the Rules of Procedure of the Commission on Civil Rights, an investigative and fact-finding agency, were challenged as being inconsistent with the Due Process Clause of the Fifth Amendment:

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . .

[D]ue process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

Although the analysis in *Hannah* is of due process in the federal constitutional sense, we have no reason to believe that Illinois courts would apply any other analysis in dealing with state common law due process.

■■ The procedural due process requirements in an organization's disciplinary or expulsion actions are necessarily dependent in part upon the nature of the member's interest in continuing his membership. Although Dr. Duby's substantial interest in continued membership in the College is patent, we do not find that due process requires that he be given a "trial-type hearing." *Cf.* Cafeteria & Restaurant Workers, *supra*, 367 U.S. at 894, 81 S.Ct. 1743. This court recently held in a student expulsion case that the type of administrative hearing there involved "need not take the form of a judicial or quasi-judicial trial." Linwood v. Board of Education of City of Peoria, 463 F.2d 763 (7th Cir. 1972). Plaintiff's interest in maintaining his membership in a private, voluntary association, while not identical to and perhaps more pressing

---

3. It is undisputed that expulsion from the American College of Surgeons substantially impairs if not destroys Dr. Duby's ability to pursue his profession insofar as surgery is concerned. The record indicates that the majority of the hospitals with which Dr. Duby was affiliated—and it is our understanding that the same is true of most accredited hospitals throughout the country—required membership in either the College or its companion association, the American Board of Surgery, Inc., as a prerequisite to affiliation.

4. While not specifically deciding the question of Illinois law, we are constrained to point out that we find arguable merit in plaintiff's contention that some form of due process protection is required in private organizations' expulsion proceedings where membership in the organization has become a prerequisite to the pursuit of a particular profession. For a discussion of the major Illinois decisions on this issue, see Sheridan, Judicial Review of Expulsions from Private Associations, 52 Ill.B.J. 842 (1964).

than a student's interest in continuing the pursuit of his education, deserves protection from arbitrary abridgement. Yet experience teaches that adequate protection can be given without the employment of full-blown adversary proceedings.[5]

 If we assume arguendo that some due process was required, as a minimum plaintiff was entitled to adequate notice of the conduct under investigation and an opportunity to prepare for, be present at and participate in an impartial hearing. *See* Whitfield v. Simpson, 312 F.Supp. 889, 894 (E.D. Ill.1970). Dealing specifically with the requirements of due process in an analogous situation, the Illinois Appellate Court stated in O'Brien v. Matual, 14 Ill.App.2d 173, 197–198, 144 N.E.2d 446, 458 (1957):

"But a court of equity will interfere where it appears the provisions of the Constitution [of a voluntary association] have not been observed . . . or [where] the member . . . has not been afforded those rudimentary rights which will give him . . . an opportunity to defend against any charges made, including reasonable notice thereof, an opportunity to be present at a hearing, to confront and cross examine his . . . accusers, to make a defense, and to endeavor to refute any evidence adduced in support of the charges."

These remarks were quoted with approval by another panel of the Illinois Appellate Court in a case involving the American College of Surgeons, Virgin v. American College of Surgeons, 42 Ill. App.2d 352, 370, 192 N.E.2d 414, 423 (1963).

 As to the adequacy of the notice given Dr. Duby in this case, there can be little question as to its effectiveness in apprising him of the time, place and subject of the inquiry. The Central Judiciary Committee's notice of its impending investigation was sent to Dr. Duby after the hospital had conducted its own inquiry. Dr. Duby obviously was aware that the hospital had made such an inquiry, and since he entered into a voluntary agreement with the hospital medical staff to restrict his surgical practice, we must assume that he was also aware of the reasons for the inquiry. Thus, in light of the actions of the hospital and the notice containing specific items sent by the Central Judiciary Committee, we cannot say that Dr. Duby was not given adequate notice of exactly what conduct was under investigation.

 Further, we must reject plaintiff's argument that because he interpreted the invitation to appear "in person or by your representative" to refer to a colleague he was not told of his right to appear with legal counsel. Whatever Dr. Duby's misapprehensions concerning the meaning of the phrase, the notice was sufficient to alert one of ordinary sophistication that legal counsel was not prohibited but, on the contrary, would be permitted. Under such circumstances, and considering the fact that plaintiff never sought clarification of the term "representative," we hold that the notice was adequate.

As to the sufficiency of the actual hearings, it would appear from the record that plaintiff was given ample opportunity to present a defense to the factual allegations. At both the Central Judiciary Committee hearing and the review by the Board of Regents, Dr. Duby was given the opportunity either to refute the allegations that he had engaged in certain unprofessional conduct or to offer any explanations for it. The fact

---

5. It might be argued that there are many other available educational opportunities to a student expelled from a particular school whereas the impact of expulsion on Dr. Duby would be to limit him substantially in the practice of a profession to which he had devoted his adult life. Conversely, however, the impact of incompetency in that profession on patients undergoing surgery is an arguable basis for requiring a surgeon to adhere to nothing less than the highest professional standards.

that he chose to admit that he had performed the acts cited and to acknowledge their impropriety in an effort to win clemency does not mean that he was not afforded a fair hearing. As this court recently stated, "it is important that the plaintiff unequivocally admitted the misconduct with which she was charged. In such a circumstance, the function of procedural protections in insuring a fair and reliable determination of the retrospective factual question . . . is not essential." Betts v. Board of Education of City of Chicago, 466 F.2d 629, at 633 (7th Cir. 1972). *Cf.* Morrissey v. Brewer, 408 U.S. 471, 476–477, 479–480, 92 S.Ct. 2593, 2597–2599, 33 L.Ed.2d 484 (1972).

Dr. Duby also contends that he was denied an opportunity to confront and cross-examine his accusers at the hearing conducted by the College's Central Judiciary Committee. The plaintiff here is characterizing as accusers the members of the investigating committee that was sent by the College to Jordan Hospital in August 1970 at the hospital's request and that, in September 1970, submitted a report about Dr. Duby. The plaintiff misconceives the purpose of confrontation of accusers. In a criminal case, where full-blown, judicial-type due process is a necessity, the accused does not confront and examine the grand jury, but he does have that right with regard to witnesses whose testimony constitutes the accusation of misconduct. Here, the investigating committee was not even analogous to a grand jury. The committee did submit a report (a copy of which was read at a hospital staff meeting at which Dr. Duby was present), but its only recommendation insofar as disciplinary action by the College was concerned was that of censure for the plaintiff's having failed to live up to his agreement with the hospital.[6] The hearing before the Central Judiciary Committee signaled the initiation of disciplinary proceedings by the College. The accusing witnesses against Dr. Duby were not the members of any committee

or body of the hospital or the College but were the medical records as to which the plaintiff had the full right of confrontation and explanation. He did not deny the accuracy of any of these records, and we are uncertain how the privilege of cross-examination is really involved here. The records were present at both hearings, and although Dr. Duby was asked to refute the information contained in them and declined to do so, they were available for use in his defense. As such, their use was completely proper. *See* Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Further, having elected not to place the accuracy of those records in issue, plaintiff will not now be heard to complain about their being the basis of action by the College against him.

It follows from the foregoing that whatever be the present status of the Illinois law with respect to the applicability of "rudimentary due process" to the expulsion procedures of voluntary associations, the plaintiff in this case was in fact afforded adequate due process.

Dr. Duby's complaint also suggests that the College failed to comply with its own bylaws. We find no merit in this contention.

Affirmed.

---

6. Jordan Hospital had requested the committee to make findings of fact and recommendations for possible action by the hospital.