FIRST DIVISION

December 28, 1998

No. 1-97-4085

ELEANOR P. PETERSEN, FRIENDS OF THE PARKS, HYDE PARK KENWOOD COMMUNITY CONFERENCE, HYDE PARK HISTORICAL SOCIETY, KAY CLEMENT, ROBERT E. MANN, and LEON M. DESPRES,

Plaintiffs-Appellants,

v.

CHICAGO PLAN COMMISSION OF THE CITY OF CHICAGO, THE MUSEUM OF SCIENCE AND INDUSTRY, a Corporation, RICHARD M. DALEY, Mayor of Chicago, ALDERMAN WILLIAM J. P. BANKS, ALDERMAN EDWARD M. BURKE, J. F. BOYLE, JR., GEORGE W. MIGALA, ALDERMAN BURTON F.  NATARUS, PAUL WOZNICKI, REUBEN L. HEDLUND, DEMETRIUS E. CARNEY, ALLISON S. DAVIS, RODRIGO d'ESCOTO, LEON D. FINNEY JR., DORIS B. HOLLEB, AMRISH K. MAJAHAN, NANCY A. PACHER, LAKE MICHIGAN FEDERATION, a Corporation, DONALD EASON, BRYANT GUMBEL, and BARBARA HOLT.

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable Stephen A. Schiller,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This is an action for administrative review of a decision by the Plan Commission of the City of Chicago (Plan Commission or Commission) approving an application of the Museum of Science and Industry (the Museum).  In its application, the Museum sought the Plan Commission's approval for its plans to expand and renovate its facilities.  Such approval is required by the Lake Michigan and Chicago Lakefront Protection Ordinance (Ordinance) before a property owner can make physical changes in designated lakefront districts.  Chicago Municipal Code §16--4--010 
et
 
seq
. 
(1990). 

The Ordinance is expressly intended, among other things, to: (1) promote and protect the people's health, safety, comfort, convenience, and general welfare; (2) conserve natural resources; (3) ensure that the lakefront parks and the lake itself are devoted to public purposes; (4) ensure the integrity of and expand the quantity and quality of the lakefront parks; (5) promote and provide for continuous pedestrian movement along the shoreline; (6) promote and provide for pedestrian access to the lake and lakefront parks from adjacent areas, and enhance visits to these locations; and (7) promote and provide for improved public transportation.

Eleanor Petersen, along with other individuals and organizations (plaintiffs), filed a response with the Plan Commission objecting to the Museum's application.  The Plan Commission held a public hearing for organizations, elected officials and members of the public including plaintiffs to express their support for or opposition to the application.  After the hearing, the Plan Commission unanimously approved the application.

Plaintiffs filed a petition for common law writ of 
certiorari
 in the circuit court, which subsequently affirmed the decision of the Plan Commission.  Plaintiffs filed this appeal.  We affirm.

The Plan Commission is the agency of the City of Chicago responsible for the administration of the Ordinance for the protection of the city's lakefront.  The Museum is a nonprofit corporation in the City of Chicago, located at 57th Street and Lake Shore Drive.  It occupies a portion of Jackson Park, a lakefront park owned by the Chicago Park District.   

In 1993, the Museum adopted a comprehensive master plan known as MSI-2000 (the Plan) to ensure that the 100-year-old Museum building and exhibit space would continue to operate as a world class cultural institution into the next century.  The Museum's plan proposed significant improvements to the Museum facilities and surrounding property. 

In May 1995, the Plan Commission approved the application filed by the Museum under the Ordinance for implementation of the first phase (Phase I) of the Museum's plan.  Phase I involved building an underground parking garage beneath the surface parking lot immediately to the north of the Museum. 

Later that same month, the Museum filed an application with the Plan Commission for approval of the second phase (Phase II) of its plans to renovate and expand its facilities.  Phase II includes, among other things, the renovation and expansion of the existing Henry Crown Space Center and construction of a new wing at the southwest corner of the Museum for use as a science learning center.   

Before submitting the application for Phase II, the Museum met with a number of government entities and community organizations to address concerns about the expansion.  These included local aldermen, the Chicago Park District, the Department of Planning and Development, the Department of Streets and Sanitation, the Department of Environment, the Commission on Chicago Landmarks, zoning committee of the Chicago city council, and community and park groups, including plaintiffs.  The Museum modified its plans in response to the concerns expressed by some of these entities.  In its final form, Phase II had the support of several organizations and institutions, including the University of Chicago, Hyde Park Career Academy, Woodlawn Preservation and Investment Corporation, Woodlawn Community Development Corporation, Woodlawn Organization, and Alexandre Dumas School.

After the Museum's application was filed, plaintiffs filed a response as parties to the proceeding before the Plan Commission and requested documents, answers to interrogatories and the right to cross-examine witnesses.  In advance of the hearing, the Plan Commission denied the right to cross-examination.  

As required by section 16--4--100(d) of the Ordinance, the Plan Commission conducted a public hearing on October 29, 1996, to allow members of the public an opportunity to express their opinions on the Museum's application.  Notice of the hearing was published in the Chicago Sun Times and written notice was sent by certified mail to the owners of all property within 250 feet of the lot line of the Museum property prior to the hearing. 

At the beginning of the hearing, plaintiffs' counsel repeated the request that all statements at the hearing be given under oath and that plaintiffs be permitted to cross-examine witnesses.  Reuben L. Hedlund, chair of the Plan Commission, explained to plaintiffs' counsel that the rules and procedures of the Plan Commission did not provide for the swearing in of witnesses or cross-examination, but assured plaintiffs that the Plan Commission would afford them the opportunity to express their opinions on the Museum's application when it heard from members of the public at the end of the hearing.

At the hearing, plaintiffs submitted a 1984 Plan Commission report and resolution entered in an earlier proceeding in which the Museum applied for approval under the Ordinance for a structure to contain an Omnimax theater, an exhibit hall, a snack bar, a dining room, a museum store, a plaza for outdoor exhibits, and a 158-space parking lot.  Except for the parking lot, the Museum had won approval in 1984 of its application on the condition that "there be no additional expansion of the Museum facilities."  A resolution to that effect was adopted by the Commission in 1984.

Those who testified in favor of the Museum's plan included Joseph Zehnder (Zehnder) of the Department of Planning; James Kahn (Kahn), president of the Museum; Lawrence Okrent (Okrent) of Okrent Associates, a firm specializing in land development planning;  Barbara Holt, fifth ward alderman; and two members of the public.   Eight people made statements opposing Phase II at the hearing.  Plaintiffs' objections at the hearing included use of park land for a museum, damage to the north lagoon of Jackson Park, the lack of the Museum's need for additional space, and a violation of the 1984 resolution.  Throughout the hearing, various members of the Plan Commission actively questioned the witnesses.  The hearing concluded with an oral motion to approve the Museum application, and the members of the Plan Commission voted unanimously to approve the Museum's application as being in compliance with the Ordinance.   On January 13, 1997, plaintiffs filed a petition for a writ of  
certiorari
 in the Cook County circuit court for judicial review of the Plan Commission's decision to approve the Museum's application.  Among the persons named as defendants in the petition were the Plan Commission, its members, Mayor Richard M. Daley, Alderman Barbara Holt (collectively, the City), the Museum and other individuals.  The court found that plaintiffs had standing to sue, but granted the Museum's motion for summary judgment and denied plaintiffs' cross-motion for summary judgment.

 Plaintiffs now appeal from the circuit court's order affirming the Plan Commission's decision to approve the Museum's application for Phase II.  They make the following arguments on appeal: (1) the Plan Commission hearing was unfair because the Commission denied plaintiffs their due process rights, specifically, the opportunity to conduct a fair cross-examination of witnesses; (2) the Plan Commission's decision should be set aside because of the Commission's alleged failure to make a written determination with findings of fact within 30 days of the close of the hearing; (3) the Plan Commission is estopped from giving its approval for Phase II because of the condition contained in the 1984 resolution that no further encroachments would take place in Jackson Park; and (4) the Plan Commission's approval of the Museum's application was against the manifest weight of the evidence.  

First, plaintiffs argue the Plan Commission hearing was unfair because the Commission denied plaintiffs their due process rights, specifically, the opportunity to conduct a fair cross-examination of witnesses.  We conclude that the inability of plaintiffs to conduct cross-examination at the public hearing on the Museum's application did not constitute a denial of due process.     

It is a constitutional right that no State may deprive a person of life, liberty or property without due process of law.  U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.  The essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  See 
Northern Illinois Home Builders Ass'n v. County of DuPage
, 165 Ill. 2d 25, 45 (1995).  Administrative proceedings themselves are governed by the fundamental principles and requirements of due process of law.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 92 (1992).  However, "procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding, 
[citation] but is satisfied by a form of procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice."  
Telcser v. Holzman
, 31 Ill. 2d 332, 339 (1964);  
Valdez v. Zollar
, 281 Ill. App. 3d 329, 336 (1996)(due process is a flexible concept which requires different levels of protection depending on the level of protectable interest at stake; the more significant the property interest, the more process is due);  see 
Rios v. Jones
, 63 Ill. 2d 488, 497 (1976) ("[t]he demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society"). 

"An administrative body possesses broad discretion in conducting its hearings."  
Village of South Elgin v. Pollution Control Board
, 64 Ill. App. 3d 565, 568 (1978).  However, this discretion must be exercised judiciously and not arbitrarily.  
Wegmann v. Department of Registration & Education
, 61 Ill. App. 3d 352, 356 (1978).  All that is required is that "the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case."  
Telcser
, 31 Ill. 2d at 339. 

The starting point in any procedural due process analysis is a determination of whether one of the constitutionally protectable interests above is present. 
Wilson v. Bishop
, 82 Ill. 2d 364, 368 (1980), citing 
Polyvend, Inc. v. Puckorius
, 77 Ill. 2d 287, 293-94 (1980).  If no constitutional right to due process protection is present, a statutory right to insist that the hearing procedures comport with due process standards of fundamental fairness may be available.  See 
Daly v. Pollution Control Board
, 264 Ill. App. 3d 968, 970 (1994), citing 
E&E Hauling, Inc. v. Pollution Control Board
, 116 Ill. App. 3d 586, 596 (1983).  For example, the Administrative Procedure Act (the Act) (5 ILCS 100/1-1 
et
 
seq
. (West 1996)), governs administrative hearings in contested cases when a state agency is involved.  See 
Daly
, 264 Ill. App. 3d at 970 (administrative proceeding initiated under the Illinois Environmental Protection Act, (415 ILCS 5/1 
et
 
seq
. (West 1996)).  When the Act applies, it expressly provides for cross-examination of witnesses in situations that call for full adversarial hearings.  5 ILCS 100/1-1 
et
 
seq
. (West 1996).  

In this case, the circuit court granted plaintiffs standing to sue, but this status did not create a constitutionally protectable interest such as a property interest.  Standing was conferred due to Jackson Park's recreational and aesthetic availability and given the role the park system plays for all citizens of the Chicago area.  See 
Sierra Club v. Morton
, 405 U.S. 727, 731, 31 L. Ed. 2d 636, 641, 92 S. Ct. 1361, 1364 (1972) (requirement of "standing to sue" is satisfied if it can be said that the plaintiff has a legally protectable and tangible interest at stake in the litigation).  However, a property interest is involved only if "a person clearly [has] more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  
Board of Regents v. Roth
, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972).   

Plaintiffs had no property interest at stake at this administrative hearing since they were advocating before the Plan Commission that a public park remain untouched.  While their interest as citizens entitles them to enjoy the park and to desire that it be preserved, it does not rise to the level of a protectable interest such as one's interest in property (
Lakeland Construction Co. v. Department of Revenue
, 62 Ill. App. 3d 1036 (1978)) or in maintaining a professional license (
Goranson v. Department of Registration & Education
, 92 Ill. App. 3d 496
 
(1980)).
  Thus, plaintiffs did not have any constitutionally protected interest in the nonexpansion and renovation of the Museum.  

Also, the Plan Commission is not a state agency and the Ordinance does not adopt the procedures set forth in the Act.

Instead, the Ordinance requires the Plan Commission to conduct a public hearing and "provide a reasonable opportunity for all interested parties to express their opinions under such rules and regulations as the commission shall adopt for the purpose of governing the application and proceedings of the commission."  Chicago Municipal Code §16--4--100(d)(amended December 11, 1991).  In this instance, the Ordinance provides plaintiffs a limited right to be notified and to appear at the hearing.  Chicago Municipal Code  §16-4-100(c),(d)(amended December 11, 1991).  The notice and hearing requirements in the Ordinance were provided not to protect individuals from deprivation of property rights, but based on concerns about how best to preserve the environmental, recreational, cultural, historical, community and aesthetic interests and values of Lake Michigan and Chicago's Lakefront.  Chicago Municipal Code §16--4--020 (1990);  
Heerey v. Berke
, 179 Ill. App. 3d 927, 936-37 (1989), quoting 
Alshuler v. Department of Housing & Urban Development
, 686 F.2d 472, 488 (7th Cir. 1982).  These are concerns that are "essentially matters of public policy, not specific benefits that State law has conferred on individuals."  
E&E Hauling, Inc. v. Pollution Control Board
, 116 Ill. App. 3d 586, 595 (1983), 
aff'd
, 107 Ill. 2d 33 (1985).   

In this case, the Plan Commission's role was to conduct a fact-gathering proceeding instead of presiding over a full adversarial hearing.  Relying on 
Hannah v. Larche
, 363 U.S. 420, 442-43, 4 L. Ed. 2d 1307, 1321-22, 80 S. Ct. 1502, 1514-15 (1960), the court in 
Jabbari v. Human Rights Comm'n
, 173 Ill. App. 3d 227, 233 (1988), determined that "the full panoply of judicial procedure" does not apply to the fact-finding investigation, including "rights of discovery, confrontation, cross-examination, and other elements of due process involved in judicial and quasi- judicial proceedings."  To that end, all aspects of due process protection need not be afforded at an administrative hearing conducted by the Plan Commission.  See 
Yellow Cab Co. v. City of Chicago
, 23 Ill. 2d 453 (1961)(at informational hearing, all parties interested should be given the fullest opportunity to present evidence before the commission to aid commission in coming to an informed opinion but testimony not required to be under oath).  The rule in 
Hannah v. Larche
 denying the "full panoply" of due process rights in an investigatory proceeding, including cross-

examination, was more recently affirmed by this court in both 
Gayle v. Human Rights Comm'n
, 218 Ill. App. 3d 109, 113 (1991), and 
Webb v. Lustig
, 298 Ill. App. 3d 695, 703 (1998).

Most of the cases cited by plaintiffs involved a plaintiff who had an identifiable property interest at stake, such as an employment status or a professional license, which triggered the protection of constitutional procedural due process.  See 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76 (1992)(denial of application of medical license); see also 
Sinderman v. Civil Service Comm'n
, 275 Ill. App. 3d 917 (1995)(discharge of police officer).  The other cases involved  plaintiffs who had a statutory right to insist that the hearing procedures comport with due process standards of fundamental fairness.  See 
Daly v. Pollution Control Board
, 264 Ill. App. 3d 968 (1994)(public's challenge to an administrative agency action under the Environmental Protection Act); 
Lakeland Construction Co. v. Department of Revenue
, 62 Ill. App. 3d 1036, 1040 (1978)(taxpayer challenge to administrative hearing on motor fuel tax assessment by Department of Revenue).

This court has previously held that due process does not always require cross-examination in a similar administrative proceeding.  In 
Fox River Valley District Council of Carpenters v. Board of Education of School District No. 231
, 57 Ill. App. 3d 345 (1978), plaintiffs claimed they were denied due process by not being allowed to cross-examine witnesses at a public hearing conducted by the defendant in response to a request by plaintiffs pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 
et
 
seq
.).  The public hearing was conducted subject to a rule of the school board prohibiting cross-examination of witnesses.  In rejecting plaintiff's due process claims, the court held:   

"It is, of course, well recognized that not all the accepted requirements of due process in the trial of a case are necessary at an administrative proceeding.  [Citations.]  We think the requirements of due process were not violated because cross examination of witnesses was not allowed by the School Board.  The rules governing cross-examination of witnesses derives [
sic
] from strictly judicial proceedings and to enforce these rules in a hearing before  a school board would subject the proceedings to undue complexity and to allow cross-examination without any rules might invite interminable and meaningless testimony and provide more heat than light to the proceedings.  We think the Board's rule in this respect was proper and necessary and not a deprivation of due process."  
Fox River Valley District Council of Carpenters
, 57 Ill. App. 3d at 349.  

In 
E&E Hauling, Inc.
, 116 Ill. App. 3d at 594-96, the court held that the Illinois Environmental Protection Act's provisions for public notice and hearings on landfill permit applications did not give the public any constitutionally protected interest triggering due process guarantees at permit application hearings.  The notice and hearing provisions of the Environmentla Protection Act were virtually identical to those of the Ordinance in this case, requiring notice to property owners within 250 feet of the subject property and providing that any person could file written comments or appear and comment at the public hearing.  
E&E Hauling, Inc.
, 116 Ill. App. 3d at 595-96.  The court stated:

"[T]he protection of property under due process is 'a safeguard of the security of interests that a person has already acquired in specific benefits.' 
Board of Regents v. Roth
, 408 U.S. 564, 576, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708 (1972).  Although the statute gives all persons a right to a hearing before the grant of a permit application, this does not create a property right where, it has been held, none existed.  At least from the point of view of these third parties, decisions on the siting of proposed landfills are essentially matters of public policy, not specific benefits that State law has conferred on individuals. [Citations.]" 
E&E Hauling, Inc.
, 116 Ill. App. 3d at 595-96.

In this case, the Ordinance in question requires the Plan Commission to conduct a public hearing and "provide a reasonable opportunity for all interested parties to express their opinions under such rules and regulations as the commission shall adopt for the purpose of governing the application and proceedings of the commission."  Chicago Municipal Code §16--4--100(d) (amended December 11, 1991).  The rules and procedures of the Plan Commission do not require persons speaking on behalf of or against any matter to be placed under oath, nor do they provide for cross-

examination.  We think this comports with the nature of the inquiry and the determination the Commission is empowered to make.  The Commission is making a public policy determination and not deciding whether specific benefits are to be conferred upon or withheld from individuals.  Thus, plaintiffs were afforded all the process that was due under the Ordinance.

Next, plaintiffs argue the Plan Commission's decision should be set aside because of the Commission's alleged failure to make a written determination with supporting findings of fact within 30 days of the close of the hearing.  We disagree.

The Chicago Municipal Code §16--4--100(e)(amended December 11, 1991) states in relevant part:

"The [Plan] [C]ommission shall make a determination with respect to the proposed application, plan, design or proposal in writing within 30 days after the hearings are concluded and shall notify the forwarding public agency and the applicant of the [Plan] [C]ommission's approval or disapproval thereof, setting forth findings of fact constituting the basis for its decision. * * * The decision of the Chicago [P]lan [C]ommission shall be deemed a final order and binding upon all parties.  Failure of the commission to make a determination within the time hereinabove prescribed shall be deemed a disapproval."  

The Plan Commission's minutes of the October 29, 1996, meeting, setting forth its decision about the Museum's proposed application, constituted a written determination within the meaning of section 16--4--100(e).  These minutes clearly state:

"A proposed Lakefront Protection Ordinance Application and an amendment to Institutional Planned Development No. 587 submitted by the Museum of Science and Industry for the area commonly known as the Museum of Science and Industry and generally located at East 57th Street and South Lake Shore Drive.  The applicant proposes to implement the remaining components of the MSI-2000 Master Plan which include the renovation and expansion of the Henry Crown Space Center, construction of a new west addition at the southwest corner of the Museum at a future date; expansion, reorganization and refurbishing of exhibit space and the upgrading of mechanical and electrical systems within the existing museum, and provision of an additional 1.3 acres of publicly accessible green space."  

Following this summary, the minutes stated "(
Approved
: 9 - 0)".  At the next Plan Commission meeting on November 14, 1996, the minutes from the October 29, 1996, meeting were "approved unanimously."  Thus, the minutes were available in writing within 30 days of the hearing and plainly state the Plan Commission's determination, unanimously approving the Museum's application.  Thus, the requirements of section 16-4-100(e) were fulfilled. 

Next, plaintiffs argue the Plan Commission is estopped from giving its approval for Phase II because of the 1984 resolution, which provided that no further encroachments on Jackson Park would take place.  Plaintiffs contend that the condition imposed by the Plan Commission prohibiting further expansion of the Museum's facilities estopped the Museum from seeking to expand its facilities and the Plan Commission was estopped from approving an application by the Museum.  We disagree.

In 
Monsanto Co. v. Pollution Control Board
, 67 Ill. 2d 276 (1977), the Illinois Supreme Court drew a distinction between a decision by an administrative agency and the setting of conditions on the agency's decision.  The court held that while decision- making by an administrative agency is a quasi-judicial act, the setting of conditions on that decision falls within the agency's quasi-legislative or rule-making powers. 
Monsanto Co.
, 67 Ill. 2d at 289; see 
Willowbrook Development Corp. v. Pollution Control Board
, 92 Ill. App. 3d 1074, 1081-82 (1981)("the attaching of conditions to a [decision] is a policy or rule-making function of the Board").  Judicial judgment should not be substituted for administrative judgment on questions within the agency's statutory power of rule making.  
Monsanto Co
, 67 Ill. 2d at 290, quoting K. Davis, Administrative Law §30.10, at 247 (1958).  An agency's decision to attach conditions to a recommendation is reviewable under the arbitrary and capricious standard.  
Monsanto Co.
, 67 Ill. 2d at 291.  Therefore, the agency may alter or amend the condition, so long as its action was not arbitrary and capricious.  See 
Citizens Utility Co. v. Illinois Commerce Comm'n
, 153 Ill. App. 3d 28, 32 (1987); 
City of Chicago v. People of Cook County
, 133 Ill. App. 3d 435, 440 (1985). 

The prohibition against additional expansion of Museum facilities in the Plan Commission's 1984 resolution was clearly a "condition" imposed on the Museum by the Plan Commission.  
The Museum's plan specifically responded to objections made in 1984 that the Museum was unwilling to replace concrete with green space.  Indeed, after the implementation of Phase II, there will be an increase in the amount and quality of publicly accessible green space surrounding the Museum and Columbia Basin.  Furthermore, the plan was well researched, extensively analyzed and well planned.  Thus, there is no support for plaintiffs' claim that the Plan Commission was bound by the condition it imposed on the Museum 12 years earlier.  There is also no basis to find the decision of the Plan Commission was arbitrary or capricious.  

Finally, plaintiffs argue that approval of the Museum's application was against the manifest weight of the evidence.  Upon review of the transcripts of the proceeding before the Plan Commission, it is apparent that the evidence supported the Plan Commission's finding that the Museum's application complied with the Ordinance. 

Supporting evidence during the hearing began with the testimony of Joseph Zehnder of the Department of Planning.  He explained how both Phase I and Phase II of the Museum's plan fulfilled the guidelines of the Ordinance. He testified on the impact of Phase II on the landscaping, quality of green space in Jackson Park, pedestrian routes, and the Museum's structures in general.  He testified that there would be a total increase of approximately one acre of green space in Jackson Park.  He also testified that the expansion plans would enhance the landscaping and spacious and continuous character of the lakeshore parks and improve the quality of green space in the courtyards and around Columbia Basin.  And, finally, he testified that Phase II would improve access to the park and the lakefront, restore the bank of the Columbia Basin, and improve lighting, security, and pedestrian circulation.

A number of witnesses testified for the Museum.  The Museum's president, James Kahn, explained why the Museum had come to need more space over the years and how the proposed expansion was intended to meet that need.  He also spoke of the importance of the Museum's educational value and of its standing as one of the top museums in the nation.

Next, Lawrence Okrent of Okrent Associates, a firm specializing in land development planning, testified in front of the Plan Commission.  Okrent testified that the Museum's plan would provide additional park space because of the added green space resulting from, among other things, moving the parking space underground during Phase I.  He also discussed the plan to plant additional specimen-quality trees, thus expanding the "tree pallet" of the park.  

Randall Mehrberg, general counsel and lakefront director of the Chicago Park District, testified next.  Mehrberg stated that Phase II complied with the Ordinance and then proceeded to give details.  He stated that the park district's preservation and planning staff, the lakefront staff, and the board of commissioners had all carefully reviewed the Museum's proposal.  The park district believed that the Museum's proposed additions, renovations, and landscaping enhancements were appropriate and would restore a lost function of the park.  The Museum had agreed to contribute funds to the restoration of the Columbia Basin and to improve the landscaping around the Museum's facilities.  Mehrberg explained how the great majority of the Museum's proposed new structure would replace a parking lot and, to the extent it would occupy any current green space, it would be very inactive space. 

In addition to the oral testimony, voluminous documents supporting the Museum's application were submitted to the Plan Commission in advance of the public hearing and made part of the official record.  Those documents included the following:

1. A report from the commissioner of the Department of Planning recommending approval of the Museum's application and setting forth the bases for his conclusion that it complied with the Ordinance and would result in overall improvements to Jackson Park;

2. A comprehensive traffic study by Barton-Aschman Associates, Inc., which concluded that the Museum's plan would bring significant benefits to the neighborhood as a whole and have a positive impact on traffic conditions;

3. A memorandum presenting the methodology and findings of a traffic signal warranty study conducted by that firm;

4. A detailed tabulation prepared by the Museum's architect, E. Vernon Johnson and Associates, Inc., reflecting the increase in publicly accessible green space that would result from implementation of the Museum's plan; 

5. A report, entitled "Evaluation of Compliance with the Planned Development Guidelines of the Chicago Zoning Ordinance and with the Policies and Purposes of the Chicago Lakefront Protection Ordinance," prepared by Okrent Associates, Inc.;

6. A memorandum from the permit review staff of the commission on Chicago landmarks recommending approval of the Museum's pre-permit application;

7. A report entitled "Assessment of MSI Proposal as Related to Jackson Park Guidelines and Policies" prepared by Okrent Associates, Inc.; and

8.  Letters from residents, civic and religious leaders in the Hyde Park and Woodlawn communities supporting the Museum's plan.

In arguing that the Plan Commission's finding is against the manifest weight of the evidence, plaintiffs assert that the witnesses at the hearing "gave no testimony whatsoever on the key issue of compliance with the Ordinance" and that they only testified to conclusions that in their opinion "the Ordinance was complied with."  However, as stated above, ample testimony and documentation was given during the hearing to support the Plan Commission's decision to approve the Museum's application.
  
Balancing the foregoing with the testimony and documents provided by the plaintiffs, we believe there was substantial evidence to support approval of the application. 

For all the reasons stated above, we affirm the judgment of the trial court. 

Affirmed.

O’BRIEN, P.J., and TULLY, J., concur.