Dr. Donald C. AUSTIN, Plaintiff,

v.

AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS (founded in 1931 as the Harvey Cushing Society), Defendant.

No. 98 C 7685.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 20, 2000.

See also, 47 F.Supp.2d 941.

Henry C. Krasnow, Krasnow, Sanberg, Cornblath & Hobbs, Chicago, IL, for plaintiff.

Russell M. Pelton, Michael A. Chabraja, Colleen Young Kraus, Ross & Hardies, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

From 1963 to 1996, Dr. Donald C. Austin, a citizen of Michigan, was a member of the American Association of Neurological Surgeons (the "AANS"), a professional association incorporated under Illinois law and with its principal place of business in this state. In 1996, the AANS suspended Dr. Austin for violating its Code of Ethics and Expert Witness Guidelines. When charged in 1995, he submitted a letter of resignation. However, rather than accepting the resignation at that time, the AANS decided to proceed with disciplinary charges that Dr. Austin provided "entirely false" testimony in a medical malpractice lawsuit against another physician, Dr. Michael Ditmore. Dr. Austin was represented by counsel throughout the proceedings, which resulted, in 1996, in a six-month suspension from membership in the AANS. In 1997, Dr. Austin appealed twice and lost. The Board then accepted his resignation. He never applied for readmission.

In 1998, Dr. Austin filed this diversity lawsuit, to be decided under Illinois law, alleging that the AANS had violated his due process rights secured to him by state law, essentially because he acted in favor of medical malpractice plaintiffs and refused to circle the wagons and justify professional incompetence by other doctors. He alleged that the AANS's unjustified and unfair actions had cost him a lot of money in expert witness fees, because the disciplinary charges made him less attractive as an expert witness. Who, after all, wants an expert who has to acknowledge that he was suspended from his professional association for ethical violations he was found to have committed as an expert witness? The AANS now moves for summary judgment, and I grant the motion.

### I.

As a court sitting in diversity, I "attempt to predict how the [Illinois] Supreme Court would decide the issues presented here." *Lexington Ins. Co. v. Rugg & Knopp,* 165 F.3d 1087, 1090 (7th Cir. 1999). In Illinois, voluntary associations have great discretion in conducting their internal affairs, and their conduct is "subject to judicial review only when they fail to exercise power consistently with their own internal rules or when their conduct violates the fundamental right of a member to a fair hearing." *Finn v. Beverly Country Club,* 289 Ill.App.3d 565, 225 Ill. Dec. 528, 683 N.E.2d 1191, 1193 (1997). If there has been no "mistake, fraud, collusion or arbitrariness," *id.,* the Illinois Supreme Court has endorsed judicial interference only when a substantial property, contract, or other economic right that implicates due process is at stake. *See Van Daele v. Vinci,* 51 Ill.2d 389, 282 N.E.2d 728 (1972). As that court stated, "[a]lthough the courts in this State have traditionally been reluctant to interfere in the internal operations of associations, [a] strong possibility that an important economic interest of the plaintiffs was affected by an improper administrative proceeding gives the court power and the duty to act." *Id.* at 731. Illinois courts will only review the decisions of private associations when

"the plaintiffs possess[ ] an important economic interest based on the individual's opportunity for ... pursuing their livelihood which was affected by improper administrative procedures." *Knapp v. Northwestern Univ.*, No. 95 C 6454, 1996 WL 495559, at \*1 (N.D.Ill. Aug.28, 1996) (unpublished opinion of Zagel, J.) (*citing Van Daele*, 282 N.E.2d at 731; *Virgin v. Amer. Coll. of Surgeons*, 42 Ill.App.2d 352, 192 N.E.2d 414, 422–23 (1963); *Duby v. Amer. Coll. of Surgeons*, 468 F.2d 364, 368–69 (7th Cir.1972)). In these cases, Judge Zagel explained:

> [T]he plaintiffs suffered direct and real economic harm to their ability to earn a living as a result of their expulsion from the professional associations. As a result, the courts held they would annul an expulsion from a voluntary association when the expulsion is not in accordance with the constitution and bylaws of the association, is influenced by bias, prejudice or lacking in good faith, or contrary to rudimentary due process or natural justice.

*Id.* The key points, then, are that under Illinois law, a court may review the internal procedures of a voluntary association with respect to its members only when: (1) the operation of the association significantly harms an important economic interest of the plaintiff belonging to the association when it acted; (2) the association (a) failed to act in accord with its own constitution and bylaws; (b) was influenced by bias, prejudice, or lacking in good faith, or (c) violated due process. This power exists, furthermore (3), only when the association has "a [public] purpose which exceeds merely that of a social organization and its endeavor to benefit from various State and Federal laws." *Van Daele*, 282 N.E.2d at 732.

## II.

### A.

The AANS does not dispute that it has a public purpose exceeding that of a mere social organization, and Dr. Austin does not argue that the association failed to follow its own rules, but rather challenges the fairness and application of those rules to his case. Dr. Austin has brought forward sufficient evidence that the Association's actions have significantly affected his economic interests by causing him to lose many hundreds of thousands of dollars in expert witness fees. The AANS contends that Dr. Austin has not established that membership in the association is an "economic necessity," but in Illinois, the standard is whether the association's actions significantly affected "an important economic interest." *Van Daele*, 282 N.E.2d at 731. To recover under Illinois law a member of a private association need not show that he will be rendered homeless or even driven to bankruptcy by its unfair action that caused him significant economic harm.

### B.

The question then comes down to whether the AANS deprived Dr. Austin of due process or treated him with bad faith in subjecting him to discipline. In Illinois, "[t]he term 'due process of law' is an ever-maturing concept that evolves from our history and precedent and is not amenable to precise definition." *People v. Washington*, 171 Ill.2d 475, 216 Ill.Dec. 773, 665 N.E.2d 1330, 1338 (1996). However, in the context of the fairness of proceedings, "[t]he essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Petersen v. Chicago Plan Commission*, 302 Ill.App.3d 461, 236 Ill.Dec. 305, 707 N.E.2d 150, 154 (1998). The Illinois Supreme Court has acknowledged that a voluntary association need not strictly adhere to "judicial standards of due process," *Van Daele*, 282 N.E.2d at 732, but must provide "one subjected to such disciplinary actions ... a hearing before a fair and impartial tribunal." *Id.* Due process is "satisfied by a form of procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice." *Petersen*, 236 Ill.

Dec. 305, 707 N.E.2d at 154 (administrative context).

■ The AANS proceedings in Dr. Austin's case more than met these standards. He does not dispute that he received written notice of the charges, with prior disclosure of all documents considered in the case, or that he was allowed to present his arguments before an AANS Committee and to cross-examine witnesses, or that he received two levels of appeal and was allowed to have representation by counsel at all stages of the proceedings. Unless the whole thing was a sham conducted in bad faith, a kangaroo court run with the cynical purpose of harming him while pretending to be fair, Dr. Austin received as much due process as anyone might hope for.

### C.

■ Dr. Austin does not actually argue directly that the AANS acted in bad faith, just that it was wrong. However, on a summary judgment motion I must "construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party." *Target Market Publishing, Inc. v. ADVO, Inc.* 136 F.3d 1139, 1141 (7th Cir. 1998). Now a tribunal is entitled to make a factually wrong decision, but if the AANS's decisions were so utterly wrong and completely unsupported that no fair and rational person viewing the evidence could have come to that conclusion, that might raise a supportable inference that the AANS acted in bad faith. Nothing in Illinois law suggests that a court may review the factual determinations of a disciplinary committee of a private association, as opposed to the fundamental fairness of its proceedings, but if the factual baselessness of the determination was so great as to raise doubts about fundamental fairness of the process that produced it, then I may review that process under the line of cases I am considering here.

■ Unfortunately for Dr. Austin, his argument does not show that the AANS's determinations were so devoid of support that a rational jury might conclude it acted in bad faith. The issue was whether he had been justified in testifying that Dr. Ditmore had committed medical malpractice in performing a sort of neck surgery called an "anterior cervical fusion" when a patient of his (the plaintiff in that malpractice case) suffered permanent, total loss of function of the recurrent laryngeal nerve, which controls the vocal cords. The AANS held that Dr. Austin's testimony in that case "had no convincing basis in either literature or logic." Dr. Austin cites two bases in the literature: (1) a 1971 article in the journal *Surgery*, by a Dr. Ralph B. Cloward, whom Dr. Austin describes as "the father" of the "anterior approach," stating that "serious complications are avoidable"; and (2) an otherwise unidentified piece by a Robert G. Watkins, on complications involved in the anterior approach, stating that "damage [to the recurrent laryngeal nerve] .. is usually from vigorous retraction.... The key to the prevention of traction injuries to the nerve is not to retract vigorously...." Dr. Austin further notes that Dr. Ditmore's defense expert in his malpractice trial testified that he disagreed with Dr. Austin because he thought the literature was wrong.

Even under the plaintiff-friendly summary judgment standard, this is not sufficient evidence to warrant a claim that the AANS's conclusion was so utterly wrong that only bad faith could explain it. Taking the evidence in the light most favorable to Dr. Austin, I must conclude that the AANS was indeed wrong, not merely that there was some basis in the literature for his testimony at Dr. Ditmore's trial. But even if the AANS was wrong, the evidence Dr. Austin provides does not show that it had to be crazy or lying to so conclude, and that is what would be required to give rise to an inference of bad faith. After all, even if serious injuries are "usually" avoidable on the anterior approach by avoiding vigorous retraction, that does not mean that an expert analyst must find to be

convincing some testimony and evidence that only negligence could explain an injury of this sort in a particular case, that negligence was the only possible explanation in that particular case. Reasonable experts could differ, and, without other evidence that the AANS proceedings were a sham, that means that Dr. Austin has not come forward with enough evidence of bad faith to persuade a rational jury.

### D.

■ Dr. Austin creatively argues that I should find for him because the AANS rules under which he was disciplined violate "public policy" by discouraging physicians from testifying for plaintiffs in medical malpractice cases. The public policy in question is that witnesses should not be intimidated from offering testimony they believe to be truthful. But there is no Illinois law giving a court power over the disciplinary decisions of a private association merely because they violate such a public policy. He cites a case in which the Northern District of Illinois enjoined an individual medical malpractice defendant from filing charges against a plaintiff's expert with the county Medical Association, *Konrad v. DeLong*, 57 F.R.D. 123 (N.D.Ill. 1972), but that action did not involve a court's interfering with the internal affairs of a private association. In a nice bit of research, Dr. Austin locates a California state decision where a court reversed a doctor's expulsion from his medical association based on its finding that his testimony in court violated its ethics code. *Bernstein v. Alameda–Contra Costa Med. Ass'n*, 139 Cal.App.2d 241, 293 P.2d 862 (1956). That is an old case, however, and this is Illinois. In this state, the only bases for a court's power to interfere in the internal operations of a private association are violation of internal association rules, deprivation of due process, or bad faith. As far as Dr. Austin has shown, these are lacking, and so he loses as a matter of law.

### III.

I GRANT the AANS's summary judgment motion, terminating this case. All other pending motions in this case are DENIED as moot.