CATHEDRAL ROCK OF GRANITE CITY, INC., Plaintiff-Appellant, v. ILLINOIS HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

Fourth District   No. 4—98—0893

Argued September 23, 1999.—Opinion filed December 9, 1999.

Paul E. Adami and Joel A. Benoit (argued), both of Mohan, Alewelt, Prillaman & Adami, of Springfield, for appellant.

Daniel Maher, of Springfield, for appellees Rosewood Care Center of Granite City, Rosewood Care Center, Inc., of Cook County and HSM Development No. 5, L.L.C.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Karen J. Dimond (argued), Assistant Attorney General, of counsel), for other appellees.

JUSTICE GARMAN delivered the opinion of the court:

The Illinois Health Facilities Planning Board (Board) granted a certificate of need (CON) jointly to defendants Rosewood Care Center, Inc., of Cook County, No. 4, and HSM Development No. 5, L.L.C. (hereinafter referred to collectively as Rosewood), on January 27, 1997, allowing Rosewood to build an 80-bed, long-term-care nursing facility in Granite City, Madison County, Illinois. Plaintiff Cathedral Rock of Granite City, Inc. (Cathedral), a competing nursing facility, ap-

pealed the decision to the circuit court of Sangamon County pursuant to section 11 of the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/11 (West 1998)). The circuit court affirmed the Board's decision. Plaintiff raises the following arguments on appeal to this court: (1) the Board's decision to grant the CON is void because the proceedings before the Board were tainted by *ex parte* communications, (2) plaintiff was denied procedural due process by the proceedings before the Board, (3) the Board's decision was against the manifest weight of the evidence and/or arbitrary and capricious, and (4) if this court invalidates the Board's regulations, plaintiff is entitled to attorney fees under section 10—55 of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/10—55 (West 1998)). We affirm.

## I. BACKGROUND

■ The purpose of the Planning Act is to "establish a procedure designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities." 20 ILCS 3960/2 (West 1998). In furtherance of this purpose, section 4 of the Planning Act provides for the creation of the Board and governs its duties and functions. 20 ILCS 3960/4 (West 1998). The Planning Act provides that no person may construct or modify a health care facility without first obtaining a CON from the Board. 20 ILCS 3960/5 (West 1998). The Illinois Department of Public Health (Department) serves as administrative and staff support for the Board. 20 ILCS 3960/4 (West 1998). The Department is authorized, with the prior approval of the Board, to prescribe rules, regulations, standards, and procedures to carry out the provisions and purposes of the Planning Act. 20 ILCS 3960/12 (West 1998). These regulations (Regulations) are contained in sections 1110.10 through 1260.50 of Title 77 of the Illinois Administrative Code. 77 Ill. Adm. Code §§ 1110.10 through 1260.50 (1996).

■ On July 10, 1996, Rosewood filed an application for a CON with the Board, requesting a permit to build an 80-bed nursing facility in Granite City, Madison County, Illinois. Rosewood owns or operates 15 other similar facilities in Illinois and Missouri. An application for a CON consists of two parts: (1) part 1110, which requires the applicant to submit information and documents showing that it meets the applicable general review criteria set forth in sections 1110.10 through 1110.2650 of the Regulations (77 Ill. Adm. Code §§ 1110.10 through 1110.2650 (1996)) and (2) part 1120, which requires the applicant to submit information and documents showing that it meets the financial and economic review criteria set forth in sections 1120.210 through

1120.310 of the Regulations (77 Ill. Adm. Code §§ 1120.210 through 1120.310 (1996)). The Board forwarded the application to the Department for its review and investigation. By letter dated July 15, 1996, the Department advised Rosewood that its application was substantially complete.

Pursuant to section 1200.30 of the Regulations (77 Ill. Adm. Code § 1200.30 (1996)), the Department published a notice in the Granite City Press that Rosewood had submitted an application for a CON and that a public comment hearing could be requested by any interested person. The Department also sent notices by mail to various nursing homes and hospitals in Granite City; to medical societies in St. Clair, Monroe, and Clinton, Illinois; and to state representatives and senators. Plaintiff received one of these individualized notices. Upon receipt of a request for a public hearing, the Department scheduled a public comment hearing and published a notice that such hearing would be held on August 19, 1996, in Granite City.

Twenty-eight people attended the public hearing. Sixteen people offered oral testimony and five submitted written materials. Twelve of the sixteen people who offered oral testimony spoke in favor of Rosewood's proposed project. Four nursing homes, including plaintiff, submitted written material in opposition to Rosewood's intended project. The opposition can be summarized as follows: (1) if constructed, Rosewood's nursing home would take all of the private paying patients, leaving only the lower-paying Medicaid patients for the other nursing homes in the area; (2) no need was shown for an additional nursing home because of the high number of empty beds in the existing nursing homes in the area; and (3) the existing homes were finding it difficult to find qualified applications to fill vacancies in their nursing staffs and Rosewood's nursing home would only compound the problem.

Following the public hearing, plaintiff and several other nursing care facilities submitted additional letters opposing Rosewood's project. Specifically, these parties contended that Rosewood's history demonstrated that it was not committed to helping Medicaid patients. They claimed that Rosewood often discharged Medicare and/or Medicaid patients from its other facilities after the patients' Medicare funds were exhausted, leaving them to find other accommodations on short notice. They also claimed that Rosewood had been very dilatory in submitting information to the Illinois Department of Public Aid to obtain Medicaid certification. The parties again urged the Department to find that the proposed area lacked both a bed need and adequate staffing. At least one party also alleged that Rosewood had improperly certified certain physician referral letters. Rosewood submitted letters and additional information rebutting all of these claims.

The first hearing before the Board was held on October 24, 1996. At the hearing, the Department submitted a report of its review of Rosewood's application. The Department's report concluded that Rosewood's proposed project was not in conformance with part 1110 of the application, but that it was in conformance with part 1120. Specifically, the Department found that of 18 applicable general review criteria, Rosewood did not meet the following three criteria: (1) allocation of additional beds (77 Ill. Adm. Code § 1110.320(b) (1996)), (2) location (77 Ill. Adm. Code § 1110.230(a) (1996)), and (3) alternatives (77 Ill. Adm. Code § 1110.230(e) (1996)).

To meet the "Allocation of Additional Beds" criterion, Rosewood was required to prove that its project would improve access to the nursing home service by documenting at least one of the following conditions: (1) the proposed service was not available within the planning area, (2) existing facilities had restrictive admissions policies resulting in access limitations, (3) existing service providers were experiencing higher than the target utilization level of 90%, and (4) the travel time to existing service providers exceeded 45 minutes for area residents. The Department concluded that Rosewood was unable to document any of these conditions. To meet the "Location" criterion, Rosewood was required to show that the primary purpose of its project was to serve the residents of the area in which the project would be physically located and that the addition of its facilities would not create a maldistribution of beds and services. The Department found that Rosewood's project would create a maldistribution because the facilities in the area were already underutilized. Specifically, it found that all of the 6 hospital-based programs and 9 of 22 long-term-care facilities located in the planning area were underutilized. The Department concluded that an additional facility would result in an unnecessary duplication of services. To meet the "Alternatives" criterion, Rosewood was required to show that its project was the least costly or most effective alternative. The Department concluded that the best alternative was to utilize existing facilities until they met target levels.

Based on these findings, the Department recommended that the Board deny Rosewood's application for a CON. Rosewood presented the following information to the Board in response the Department's finding: (1) the State's own bed-need standards indicated a need for 80 beds in the proposed area; (2) other attempts to build a nursing facility in the area had been made but failed; (3) though underutilized facilities were in the planning area, Granite City residents would not likely use the facilities because they were not located within certain artificial geographic boundaries outside of which Granite City residents

tended not to travel; (4) Rosewood's other facilities had only a small percentage of Medicaid patients because they were located in affluent areas; and (5) Rosewood had made a conscious corporate decision to accept Medicaid patients, even up to 100%, in the proposed project to better serve the area, which was economically depressed.

Upon the conclusion of the presentations, the Board denied approval of the CON by a unanimous vote of 12. Pursuant to section 1130.760 of the Regulations (77 Ill. Adm. Code § 1130.760 (1996)), the Board issued a notice of "intent-to-deny" to Rosewood. The Board advised Rosewood that it had the right to a hearing to appeal the decision and that it had 60 days to submit additional material to the Department to support or modify the project. Although Rosewood did submit additional material, it was not within the 60-day period. Consequently, this material was never forwarded to the Board.

A second hearing was held before the Board on January 24, 1997. The Department was present and advised the Board that Rosewood had not timely submitted any additional material. The Department's recommendation to deny Rosewood's application stood firm. Rosewood acknowledged the late submission, but explained that the only new information it had submitted was in response to an inquiry from the Board at the previous hearing. The Board asked Rosewood to defend the charge that it should be denied a CON because nine of the existing general long-term-care facilities in the planning area were underutilized. Rosewood explained that three of the facilities did not accept Medicaid patients and, thus, would not be available for Granite City residents, most of whom were likely on Medicaid. Rosewood also contended that of the six remaining facilities, two were operating at their target full capacity, but only appeared to be underutilized because they were new or still under construction. The beds these facilities did have were fully occupied. Thus, Rosewood concluded, only 4 of the 22 general long-term-care units in the planning area were underutilized, not 9. Of the four remaining facilities, Rosewood explained that only two were in the artificial geographic boundaries it had described in the previous hearing. Of those two, one operated at 87% utilization levels and the other at 90%. Thus, Rosewood believed the area was clearly underserviced. Rosewood indicated that not only was it willing to provide service to this area, but that it would have little difficulty obtaining financing.

The Board then inquired into the bed need in the area, at which point the Department stated that it believed its original projection of an 80-bed need was too high. The Board spent considerable time discussing the issue but, aside from recognizing that it was a dilemma for the Board, the Board did not reach a clear conclusion at the meet-

ing. However, the Board did find it significant that a facility may actually operate fewer beds than the number for which it was licensed. Thus, if utilization rates were based on licensed capacity instead of actual number of beds, these rates may appear lower than they really are.

Upon the conclusion of the presentations, the Board voted eight to four to approve the project and issue a CON to Rosewood, and a letter was sent to Rosewood on January 27, 1997, advising it as such. On February 28, 1997, plaintiff filed with the Board a "Petition to Intervene with attached Motion for Reconsideration and Motion for the Board to Revoke the CON" (petition for intervention). In its petition for intervention, plaintiff supplied information that it claimed was previously unavailable and alleged that Rosewood had made misrepresentations of facts to the Board. By letter dated August 4, 1997, the Illinois Attorney General notified plaintiff that neither the Planning Act nor the Regulations authorized plaintiff to bring the petition for intervention and the Board had no authority to recognize it.

Plaintiff filed a complaint for administrative review in the circuit court of Sangamon County against the Board, its members, the Department, Rosewood, and Rosewood Care Center of Granite City. In its brief to the circuit court, plaintiff contended that (1) the Board's decision to grant a CON was against the manifest weight of the evidence, (2) the grant of the CON was void because of *ex parte* communications between Rosewood and the Board, and (3) due process required that plaintiff be given notice and a hearing and that the Board recognize its petition for intervention. The circuit court affirmed the Board's decision and found no due process violations.

This appeal followed.

## II. ANALYSIS

### A. *Ex Parte* Communications

Plaintiff argues that the proceedings before the Board were tainted by improper *ex parte* contacts between Rosewood and the Board. Plaintiff contends that *ex parte* communications render the Board's decision void and asks us to reverse. We find plaintiff's argument to be without merit.

Plaintiff's allegations of *ex parte* communications appear to be based solely upon its reading of the transcript of the January 24, 1997, Board meeting, at which the Board granted the CON. Plaintiff has provided this court with no other "proof." The first incidence of *ex parte* communications, plaintiff contends, is evidenced by the statement of Charles Foley, a representative from Rosewood, at the January 24, 1997, meeting:

"[T]he information that was submitted was primarily, number one, at the last meeting, Mrs. Washington had some questions regarding the pro formas, and I did submit the information on the pro formas."

■ Plaintiff contends that because nothing in the administrative record related to additional information on the *pro formas*, the submission of the additional information amounted to an *ex parte* communication. Plaintiff is correct that section 10—60 of the Procedure Act (5 ILCS 100/10—60 (West 1998)), which is incorporated into the Planning Act (20 ILCS 3960/18 (West 1998)), prohibits *ex parte* communications and requires that all *ex parte* communications be included in the record. However, we find plaintiff's allegations to be unfounded. Our reading of the record suggests that Foley was explaining to the Board that Rosewood's late submission did not contain any new information. In so doing, Foley briefly listed the contents of the submission. We do not find this to be sufficient evidence of an *ex parte* communication. More important, it is also clear from the record that, because it was late, Rosewood's submission was never submitted to, or reviewed by, the Board or made part of the administrative record.

■ Plaintiff next contends that a second *ex parte* communication was evidenced by Board member Kurshenbaum's statement that three of the nine underutilized long-term-care nursing homes in the planning area had restrictive admissions policies: "Well, I went down the list—well, I have the attachment list that shows that three [nursing homes] are restrictive. Where did I get it, I don't know. I found it in here." Plaintiff contends that the record does not contain any information on the restrictive policies of these nursing homes. Thus, the only way Kurshenbaum could have obtained this information would have been through *ex parte* communications. Again, we find that plaintiff's contentions amount to mere speculation, unsupported by the record. As defendants correctly assert, the administrative record does contain information regarding the admissions policies of the nursing homes. This information was contained in the attachments to Rosewood's CON application. Thus, Kurshenbaum could, and likely did, obtain this information from the attachments to Rosewood's application.

We conclude that the record fails to support plaintiff's allegations of *ex parte* communications. Having found no *ex parte* communications, we reject plaintiff's argument that the Board's decision is void.

## B. Due Process Violations

Plaintiff next argues that it was denied procedural due process by the proceedings before the Board because (1) it was not given notice of, or an opportunity to be heard at, the October 24, 1996, and Janu-

ary 24, 1997, Board meetings; (2) it had no opportunity to challenge the CON on the basis that it was issued on false and misleading information; and (3) the Board rejected its petition for intervention. Plaintiff asks us to reverse and remand for further hearing with directions that plaintiff be given notice and an opportunity to be heard. We find no merit in plaintiff's arguments.

■ "It is a constitutional right that no State may deprive a person of life, liberty[,] or property without due process of law." *Balmoral Racing Club, Inc., v. Illinois Racing Board*, 151 Ill. 2d 367, 405, 603 N.E.2d 489, 505 (1992), citing U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Administrative proceedings, as well as judicial proceedings, are governed by the fundamental principles of due process of law. *Balmoral*, 151 Ill. 2d at 405, 603 N.E.2d at 505.

■ The starting point in any due process analysis is a determination of whether a life, liberty, or property interest exists that has been interfered with by the state. If no such interest is present, no process is due. *Balmoral*, 151 Ill. 2d at 405, 603 N.E.2d at 505; *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415, 687 N.E.2d 1050, 1060 (1997). Plaintiff contends in its brief that the "interests of competing, long-term[-]care facilities are property interests subject to protection" and that, accordingly, it is entitled to participate in the CON application process to protect its interests. Aside from this conclusion, plaintiff fails to identify the nature of these alleged property interests.

"An interest is a property right subject to due process protections if that interest is secured by rules or mutually explicit understandings that support the claim of entitlement." *East St. Louis Federation of Teachers*, 178 Ill. 2d at 416, 687 N.E.2d at 1060. We can find·no interest of plaintiff implicated by the Board's proceedings that rises to the level of a protectable property interest. Plaintiff essentially contends that it has some protectable property interest simply by being a competitor of Rosewood. We do not agree.

The First District Appellate Court faced a similar issue in *Winston Plaza Currency Exchange, Inc., v. Department of Financial Institutions*, 211 Ill. App. 3d 1062, 570 N.E.2d 855 (1991). In *Winston*, the Illinois Department of Financial Institutions (Agency) issued a license to North Avenue Exchange to operate a new currency exchange. Upon submission of the application, the Agency was required to investigate both the need for a currency exchange at the location specified in the application and the effect of an additional currency exchange on the financial stability of other community currency exchanges. Pursuant to that obligation, the Agency issued a notice to other licensed cur-

rency exchanges in the area, including Winston Plaza Currency Exchange, Inc., informing them of the proposed license and soliciting their comments. Winston conveyed its objections, orally and in writing, to the Agency, both prior and subsequent to the grant of the license. When the Agency informed Winston that the decision would stand, Winston filed a complaint for judicial review alleging, among other things, that it had a due process right to be heard before the new license was granted. The circuit court dismissed Winston's claim, and Winston appealed. On appeal, the first district held that Winston, just by being a competitor, had no direct interest in the matter that could give rise to a right to be heard. The court further held that the Agency's obligation to conduct an investigation prior to the issuance of a new license did not confer any protectable property interest upon Winston in the new license. Because the actions of the Agency were not directed at Winston's own license, the court found its claim of a due process violation unavailing. *Winston*, 211 Ill. App. 3d at 1069, 570 N.E.2d at 860.

We agree with the holding in *Winston* and find it applicable in this case. As a competitor, plaintiff did not have any property interests that were implicated by the Board's proceedings. No protectable property interests were conferred upon plaintiff by the Department's obligation to notify affected parties and to hold a public hearing upon their request, or by the Board's obligation to review the information presented at the public hearing. As defendants correctly contend, the purpose of the Planning Act is to "establish a procedure designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities." 20 ILCS 3960/2 (West 1998). The public hearing furthers that goal by allowing affected parties to submit relevant information about the need for a new facility. The purpose of the Planning Act and the public hearing is not to provide protection to competitors from an imposition on their market shares. The Board's decision to grant a CON to Rosewood had no significant impact on plaintiff's CON. Plaintiff was free to continue to operate its nursing facility. While plaintiff's market share may have been adversely affected by the Board's decision, plaintiff's interest in such share is certainly not akin to the types of property interests entitled to due process protections. No rule or law forever entitles plaintiff to such share. Accordingly, because we find that plaintiff had no protectable property interest implicated by the Board's proceedings, it was not entitled to any due process rights in Rosewood's application process.

Even if we were to conclude that plaintiff had a protectable property interest, the proceedings used by the Board were not so unfair as

to violate principles of due process. Not all of the procedural protections due in a trial setting are required in an administrative proceeding. *Petersen v. Plan Comm'n*, 302 Ill. App. 3d 461, 466, 469, 707 N.E.2d 150, 154, 156 (1998). " 'All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard," [citation], to [e]nsure that they are given a meaningful opportunity to present their case.' " *Petersen*, 302 Ill. App. 3d at 466, 707 N.E.2d at 154, quoting *Mathews v. Eldridge*, 424 U.S. 319, 349, 47 L. Ed. 2d 18, 41, 96 S. Ct. 893, 909 (1976).

The Planning Act requires the Board to consider not only the interest of the permit applicant, but also the public's interest in the orderly and economic development of health care facilities. 20 ILCS 3960/2 (West 1998). In furtherance of this requirement, the Planning Act requires that "affected persons" be given notice of the application and a right to present testimony at a public hearing. That testimony is admitted into the administrative record and is considered by the Board in making its decision. 20 ILCS 3960/8 (West 1998). The Department and Board are empowered under the Planning Act to conduct such investigations as they deem necessary to ensure that the interest of the applicant and the public are fully considered. 20 ILCS 3960/13 (West 1998). Finally, the Planning Act also entitles parties adversely affected by the Board's final decision to seek judicial review. Under these circumstances, we find that the Planning Act and the Regulations give a party in plaintiff's position a meaningful opportunity to present its case. To allow such parties greater participation opportunities would risk unnecessarily prolonging and complicating the CON application process.

Plaintiff clearly took full advantage of the opportunity to participate in the process. It was present at the public hearing and submitted written testimony opposing Rosewood's project. Thereafter, it submitted two very detailed and lengthy letters in further support of its opposition. All of this testimony was made part of the administrative record and was considered by the Board in making its decision. Thereafter, plaintiff sought judicial review of the Board's decision by filing a complaint with the Sangamon County circuit court. Accordingly, we conclude that plaintiff received due process of law.

## C. Review of Board Decision

Plaintiff next contends that the Board's decision to grant the CON to Rosewood must be reversed because it was both (1) against the manifest weight of the evidence and (2) arbitrary and capricious. We disagree. We will address each standard separately.

## 1. *Manifest Weight of Evidence*

The factual findings of an administrative agency are viewed as *prima facie* correct, and a reviewing court will not disturb those findings unless they are contrary to the manifest weight of the evidence. A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Bridgestone/Firestone, Inc. v. Doherty*, 305 Ill. App. 3d 141, 146, 711 N.E.2d 799, 804 (1999). If the record contains evidence supporting the administrative agency's decision, the decision should be affirmed. *Golab v. Department of Employment Security*, 281 Ill. App. 3d 108, 114, 666 N.E.2d 347, 351 (1996). We have carefully reviewed the record and do not find that the Board's decision was against the manifest weight of the evidence.

The Planning Act provides that the Board must approve and issue a permit if it determines that (1) the applicant is fit, willing, and able to provide a proper standard of health care for the community; (2) the project is economically feasible; (3) the project is in the public interest; and (4) the project is consistent with the orderly and economic development of such facilities and is in accord with the standards promulgated by the Board. 20 ILCS 3960/6 (West 1998). Section 1130.660 of the Regulations provides, in relevant part, as follows:

> "The State Board shall consider the application and any supplemental information or modification submitted by the applicant, [Department] report(s), the public hearing testimony, if any, and other information coming before it in making its determination whether to approve the project. The applications are reviewed to determine compliance with review criteria enumerated in 77 Ill. Adm. Code [§ ]1110, 1230[,] or 1240. The failure of a project to meet one or more review criteria, as set forth in 77 Ill. Adm. Code [§ ]1110, or 1240 shall not prohibit the issuance of a permit." 77 Ill. Adm. Code § 1130.660 (1996).

Upon our review of the record, we found that it contained substantial evidence supporting the Board's decision to grant the CON, including the following: (1) Rosewood's application met 15 of 18 of the review criteria; (2) Rosewood provided substantial written and oral testimony rebutting the Department's findings that three of the review criteria were not met; (3) although several competing facilities expressed concern over Rosewood's Medicaid policies, Rosewood was Medicaid certified in its other facilities and had made a commitment to accept up to 100% Medicaid patients at the Granite City facility; (4) although a discrepancy existed in the exact number, the State's own inventory indicated a bed need in the proposed area; (5) although a CON had been issued for the same area a few years earlier, the party to whom it was issued was unable to obtain financing and never built

the nursing home and, thus, the area was still underserviced; (6) Rosewood was properly licensed and experienced in the nursing home service, and it was willing and financially able to undertake the proposed project; (7) although nine other general long-term-care facilities in the planning area were underutilized, three of these facilities did not accept Medicaid and would not be available to Granite City residents and two of the facilities were new or still under construction; (8) of the four remaining underutilized facilities, only two were within Granite City's artificial geographic boundaries, and both were already operating close to, or above, 90% utilization levels; (9) no available data showed whether a facility actually operated the number of beds for which it was licensed, and it was possible that the utilization levels of the existing facilities were closer to target levels than originally calculated; and (10) although several competing facilities clearly opposed the project, the record contained many letters and evidence of support for the project from the members of the community.

Needless to say, the record is replete with evidence upon which the Board may have based its decision to grant the CON. It is not clearly evident that the Board should have denied the CON. Although the Department recommended against granting the CON based on its finding that Rosewood had not met three review criteria, it is well settled that the Board is not bound by the Department's findings. *Access Center for Health, Ltd. v. Health Facilities Planning Board*, 283 Ill. App. 3d 227, 236, 669 N.E.2d 668, 674 (1996). It is also clear that Rosewood submitted substantial evidence opposing the Department's findings that Rosewood did not meet three review criteria. We find that the Board's decision was not against the manifest weight of the evidence.

## 2. *Arbitrary and Capricious*

█ Plaintiff also contends that the Board's decision was arbitrary and capricious. In *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 505-06, 524 N.E.2d 561, 581 (1988), the Supreme Court of Illinois held that the following guidelines should be applied in determining whether an agency's action is arbitrary and capricious: (1) did the agency rely on factors not intended by the legislature; (2) did the agency entirely fail to consider an important aspect of the problem; or (3) did the agency offer an explanation for its decision that runs counter to the evidence or that is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise? In urging this court to find that the Board's decision was arbitrary and capricious, plaintiff makes several contentions. We reject all of these contentions.

■ First, plaintiff contends that the Board's decision was arbitrary and capricious because Rosewood failed to meet all of the review criteria. However, section 1130.660 of the Regulations clearly provides that "[t]he failure of a project to meet one or more review criteria *** shall not prohibit the issuance of a permit." 77 Ill. Adm. Code § 1130.660 (1996).

Second, plaintiff contends that the Board erroneously considered certain information, such as Rosewood's offer to accept Medicaid patients, which it was not permitted to consider under the Regulations. However, section 1130.660 also provides that the Board may consider "other information coming before it." 77 Ill. Adm. Code § 1130.660 (1996). The Regulations do not limit the "other information" the Board may consider, and the Board is free to use its expertise to determine what information is relevant.

Third, plaintiff contends that the Board entirely failed to consider whether the physician referrals submitted by Rosewood were for skilled care, intermediate care, or custodial care. However, plaintiff fails to explain how this was "an important aspect of the problem" under the second guideline of *Greer*, and, in our judgment, it was not.

Fourth, plaintiff contends that the Board erroneously relied on its belief that an 80-bed need existed, when the need was actually only 52 beds. Plaintiff further contends that the Board failed to consider more recent 1995 data on bed need in the area. The record reveals, however, that the Board was keenly aware of the discrepancy in the numbers and understood that it was a dilemma it needed to resolve.

Finally, plaintiff contends that the Board's decision was arbitrary and capricious because it was based upon the Department's incorrect conclusions that Rosewood had established the following four review criteria: (1) a sufficient supply of manpower existed (77 Ill. Adm. Code § 1110.230(c) (1996)); (2) Rosewood was a qualified health care service provider for the community (77 Ill. Adm. Code § 1110.230(d) (1996)); (3) in the second year of operation, the utilization rate would meet target levels (77 Ill. Adm. Code § 1110.230(g)(2) (1996)); and (4) the proposed project was financially feasible (77 Ill. Adm. Code § 1110.210 *et seq.* (1996)).

We note initially that defendants contend that plaintiff has forfeited its right to object to the Department's findings on these criteria because it did not raise the objection during the administrative proceedings. A failure to assert an argument during the administrative proceedings results in forfeiture of that point on appeal. *Cooper v. Department of Children & Family Services*, 234 Ill. App. 3d 474, 485-86, 599 N.E.2d 537, 544-45 (1992). However, we find that plaintiff adequately raised its disagreement with the Department's finding in

its letters to the Department dated August 1, August 21, and September 13, 1996. Even if it did not adequately raise the issues, forfeiture is not a limitation on this court's right to entertain an argument and we choose to address plaintiff's argument. *Hux v. Raben*, 38 Ill. 2d 223, 224, 230 N.E.2d 831, 832 (1967); *People v. Heard*, 187 Ill. 2d 36, 60, 718 N.E.2d 58, 72 (1999).

We find plaintiff's position to be unpersuasive for several reasons. First, we find that the Department's findings were adequately supported by the record. Second, the Board was not bound by the Department's findings (*Access*, 283 Ill. App. 3d at 236, 669 N.E.2d at 674), and plaintiff has provided no proof that the Board's decision was based solely or primarily on the Department's findings with respect to these criteria. Third, even if plaintiff is correct that Rosewood failed to meet these four criteria, we reiterate that the failure to meet one or more review criteria is not grounds for denial of a CON. 77 Ill. Adm. Code § 1130.660 (1996).

Upon our review of the record, we conclude that none of the *Greer* guidelines are met. The Board was entitled to consider all of the factors. The Board fully discussed the important aspects of the project, including the need for the project, the background and financial qualifications of Rosewood, the effect of the project on the existing facilities, and Rosewood's commitment to Medicaid patients. The Board's decision was not contrary to the evidence before it. For all of these reasons, we find that the Board's decision was not arbitrary or capricious.

Plaintiff has supplied an abundance of data and information in its brief and essentially urges this court to find that its interpretation of the data, information, and evidence is more correct than that of the Board. A reviewing court, however, may not substitute its judgment for that of the administrative agency. The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal of the administrative findings. *Golab*, 281 Ill. App. 3d at 114, 666 N.E.2d at 351. Having concluded that the Board's decision is neither against the manifest weight of the evidence nor arbitrary and capricious, we find no basis for reversal.

## D. Attorney Fees

■ Because this court has not invalidated any of the Regulations, plaintiff's request for attorney fees under section 10—55(c) of the Procedure Act is moot.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.