Docket No. 99380–Agenda 24–September 2005.

BIG SKY EXCAVATING, INC., 
et al.
, Appellees, v. ILLINOIS BELL TELEPHONE COMPANY 
et al.
, Appellants.

Opinion filed December 1, 2005.

JUSTICE KARMEIER delivered the opinion of the court:

Plaintiffs brought an action in the circuit court of Madison County challenging the constitutionality of section 13–502.5 of the Public Utilities Act (220 ILCS 5/13–502.5 (West 2002)), which abated proceedings then pending before the Illinois Commerce Commission and mandated that $90 million be refunded to certain customers of telecommunication services. On plaintiffs’ motion for summary judgment, the circuit court declared section 13–502.5 invalid on the grounds that it violated the prohibition against special legislation set forth in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §13) and denied the Illinois Constitution’s guarantees of due process and equal protection (Ill. Const. 1970, art. I, §2). Because the circuit court’s judgment declared a statute of this state invalid, the appeal was taken directly to our court. 134 Ill. 2d R. 302(a). For the reasons that follow, we now reverse.

Telephone companies in Illinois have long been regulated as public utilities. As such, their rates were determined by administrative agencies. Before a telephone company could alter the price of its services, it was required to give 45 days notice to the Illinois Commerce Commission (Commission) and the public. 220 ILCS 5/9–201(a), 13–504(a) (West 2002). The Commission could then suspend the effectiveness of the price change for up to 11 months while deciding whether to approve it. 220 ILCS 5/9–201(b), 13–504(a) (West 2002).

In 1985, the General Assembly enacted the Universal Telephone Service Protection Law of 1985 (220 ILCS 5/13–100 
et seq.
 (West 2002)), which created two classifications of telephone services: “competitive” and “noncompetitive” (220 ILCS 5/13–502 (West 2002)). Generally speaking, noncompetitive services remain subject to the requirements discussed above. See 220 ILCS 5/13–504(a) (West 2002). Under section 13–502(b) of the Universal Telephone Service Protection Law (220 ILCS 5/13–502(b) (West 2002)), however, an incumbent provider is now allowed to declare a service competitive with respect to an identifiable class of customers (such as business customers in a certain geographic area) if “such service, or its functional equivalent, or a substitute service” is “reasonably available from more than one provider.” This categorization is significant because once a service has been declared competitive, prices can be changed immediately simply by filing a new tariff and, in the case of an increase, providing notice to customers. 220 ILCS 5/13–505(a) (West 2002).

The power of telecommunications providers to declare a service competitive is not unrestricted. Section 13–502(b) of the Universal Telephone Service Protection Law confers on the Commission the authority “to investigate the propriety of any classification of a telecommunications service on its own motion” and requires it to investigate the propriety of any classification where a complaint has been filed. 220 ILCS 5/13–502(b) (West 2002). The statute sets forth standards for evaluating whether a service should be reclassified as competitive (see 220 ILCS 5/13–502(c) (West 2002)) and provides that “[i]n any hearing or investigation, the burden of proof as to the proper classification of any service shall rest upon the telecommunications carrier providing the service” (220 ILCS 5/13–502(b) (West 2002)). Where the reclassification of service as competitive is successfully challenged, the Commission has the power to order the carrier to refund any overcharges that may have resulted from the improper classification. It may also order other remedies as authorized by the statute or seek appropriate relief in a court of competent jurisdiction. 220 ILCS 5/13–502(e) (West 2002).

On February 6, 1998, Illinois Bell Telephone Company, doing business as SBC Illinois, filed a tariff with the Commission reclassifying many of the business services it provided to small business customers as competitive. After Illinois Bell reclassified its services, it raised rates for many of those services. Pursuant to the authority conferred on it by section 13–502(b) of the Universal Telephone Service Protection Law (220 ILCS 5/13–502(b) (West 2002)), the Commission initiated an investigation of Illinois Bell’s actions. Hearings were conducted during which a substantial evidentiary record was compiled. The Commission hearing examiners assigned to the matter ultimately submitted a proposed order to the Commission finding that Illinois Bell had wrongfully reclassified many of its small business services as competitive and that such reclassification resulted in unwarranted and significant rate increases. The proposed order, dated March 30, 2001, concluded that Illinois Bell should refund the price increases it had charged affected customers.

In accordance with section 200.830 of title 83 of the Administrative Code (83 Ill. Adm. Code §200.830 (2005) (as amended by 20 Ill. Reg. 10607, eff. August 15, 1996)), the parties were permitted to file exceptions to the proposed order and replies to the exceptions. While the matter was still pending, and before the Commission issued a final order in the case, the General Assembly enacted Public Act 92–22. That legislation made numerous changes to various statutes concerning telecommunications. It repealed section 13–803 of the Universal Telephone Service Protection Law (220 ILCS 5/13–803 (West 2000)), which would have repealed the entire Universal Telephone Service Protection Law as of July 1, 2001, and extended the life of the statute, as amended, until June 30, 2005 (220 ILCS 5/13–803 (West 2002)).
(footnote: 1) At the same time, it added an entirely new section to the law, section 13–502.5 (220 ILCS 5/13–502.5 (West 2002)), which declared:

“(a) Any action or proceeding pending before the Commission upon the effective date of this amendatory Act of the 92nd General Assembly [Public Act 92–22] in which it is alleged that a telecommunications carrier has improperly classified services as competitive, other than a case pertaining to Section 13–506.1, shall be abated and shall not be maintained or continued.

(b) All retail telecommunications services provided to business end users by any telecommunications carrier subject, as of May 1, 2001, to alternative regulation under an alternative regulation plan pursuant to Section 13–506.1 of this Act shall be classified as competitive as of the effective date of this amendatory Act of the 92nd General Assembly [Public Act 92–22] without further Commission review. Rates for retail telecommunications services provided to business end users with 4 or fewer access lines shall not exceed the rates the carrier charged for those services on May 1, 2001. This restriction upon the rates of retail telecommunications services provided to business end users shall remain in force and effect through July 1, 2005; provided, however, that nothing in this Section shall be construed to prohibit reduction of those rates. Rates for retail telecommunications services provided to business end users with 5 or more access lines shall not be subject to the restrictions set forth in this subsection.

(c) All retail vertical services, as defined herein, that are provided by a telecommunications carrier subject, as of May 1, 2001, to alternative regulation under an alternative regulation plan pursuant to Section 13–506.1 of this Act shall be classified as competitive as of June 1, 2003 without further Commission review. Retail vertical services shall include, for purposes of this Section, services available on a subscriber’s telephone line that the subscriber pays for on a periodic or per use basis, but shall not include caller identification and call waiting.

(d) Any action or proceeding before the Commission upon the effective date of this amendatory Act of the 92nd General Assembly [Public Act 92–22], in which it is alleged that a telecommunications carrier has improperly classified services as competitive, other than a case pertaining to Section 13–506.1, shall be abated and the services the classification of which is at issue shall be deemed either competitive or noncompetitive as set forth in this Section. Any telecommunications carrier subject to an action or proceeding in which it is alleged that the telecommunications carrier has improperly classified services as competitive shall be deemed liable to refund, and shall refund, the sum of $90,000,000 to that class or those classes of its customers that were alleged to have paid rates in excess of noncompetitive rates as the result of the alleged improper classification. ***

(e) Any telecommunications carrier subject to an action or proceeding in which it is alleged that the telecommunications carrier has improperly classified services as competitive shall also pay the sum of $15,000,000 to the Digital Divide Elimination Fund established pursuant to Section 5–20 of the Eliminate the Digital Divide Law, and shall further pay the sum of $15,000,000 to the Digital Divide Elimination Infrastructure Fund established pursuant to Section 13–301.3 of this Act.”

The effect of the foregoing legislation was to abate the Commission case against Illinois Bell, render all Illinois Bell business services “competitive” within the meaning of the Universal Telephone Service Protection Law without future review, require Illinois Bell to make $90 million in refunds to the customers who would have been affected by the now abated Commission proceedings against it, and obligate the company to deposit $15 million into the Digital Divide Elimination Fund and an additional $15 million into the Digital Divide Elimination Infrastructure Fund.

 After section 13–502.5 took effect, the Commission complied with the new law’s requirements and dismissed the proceedings it had initiated to challenge Illinois Bell’s reclassification of its small business services as “competitive.” Shortly thereafter, a lawsuit was filed in the circuit court of Sangamon County on behalf of a purported class of Illinois Bell’s small business customers, seeking to overturn section 13–502.5 on the grounds that it constituted impermissible special legislation and denied the plaintiffs’ due process and equal protection rights in violation of the Illinois Constitution of 1970. The circuit court denied plaintiffs’ motion for partial summary judgment, rejected plaintiffs’ request for class certification, and granted Illinois Bell’s motion to dismiss. Plaintiffs did not appeal.

Almost one year later, a similar action was filed in the circuit court of Madison County. The plaintiffs in that action, which is the one before us today, are two Illinois businesses that sought to represent a class of all Illinois Bell business customers who used between 1 and 11 telephone lines. As grounds for their complaint, the Madison County plaintiffs alleged that they were harmed by enactment of section 13–502.5 of the Universal Telephone Service Protection Law because the regulatory proceedings abated by the new law would have enabled them to recover substantially larger refunds than the statute mandates. They further asserted that by declaring Illinois Bell’s services to be competitive, section 13–502.5 will permit the company to collect excessive and noncompetitive rates from them in the future without review by the Commission or the courts.

As amended, the Madison County complaint contained six counts. Counts I, III and V each sought the same relief: (1) a declaration that section 13–502.5 violates the special legislation, due process and equal protection provisions of the Illinois Constitution of 1970 and (2) an order requiring the Commission to reinstate the regulatory proceedings abated by section 13–502.5’s enactment.
(footnote: 2) The only difference between counts I, III and V was the composition of the purported class on whose behalf the respective counts were asserted. Count I dealt with the entire class of Illinois Bell business customers with between 1 and 11 telephone lines. Counts III and V each dealt with subsets of that class. Count III was brought on behalf of business customers with between 1 and 4 lines, while count V sought relief on behalf of business customers with between 5 and 11 lines.

Counts II, IV and VI paralleled counts I, III and V, but sought alternative relief in the event plaintiffs’ constitutional challenges were rejected. Specifically, they prayed for: (1) an accounting to determine how much of the statutorily mandated refunds should properly be paid to the class of business customers plaintiffs represented, and (2) creation of an interest-bearing account to hold the refund money until the appropriate allocation is determined and the refunds are made. By order of the circuit court, these alternative counts were held in abeyance pending resolution of plaintiffs’ constitutional challenge.

Because plaintiffs’ complaint challenged the constitutionality of a state statute, and because the state was not already a party to the proceedings, plaintiffs were required to notify the Attorney General that they were raising the constitutional issue. 134 Ill. 2d R. 19(a). The requisite notice was given. The Attorney General did not elect to participate in the case and filed no petition to intervene. See 134 Ill. 2d R. 19(c).

In August of 2004, the circuit court ruled that this proceeding could be maintained as a class action. The following month, the court entered an order: (1) denying a motion filed by Illinois Bell to dismiss counts I, III and V of plaintiffs’ complaint and (2) granting partial summary judgment in favor of plaintiffs and against Illinois Bell on those three counts. In its order, the court declared section 13–502.5 of the Universal Telephone Service Protection Law invalid on the grounds that it violated the prohibition against special legislation set forth in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §13) and denied the Illinois Constitution’s guarantees of due process and equal protection (Ill. Const. 1970, art. I, §2). Because the court believed that section 13–502.5 was severable from the remainder of the legislation enacted by Public Act 92–22, the court further ruled that its ruling did not affect the balance of the new law. The question of whether the court should order reinstatement of the administrative proceedings abated by section 13–502.5’s enactment was not reached. The court’s determination that the statute was invalid obviated the need to address the alternative relief requested in counts II, IV and VI of plaintiffs’ complaint.

Illinois Bell promptly appealed the circuit court’s judgment. As noted at the outset of this opinion, because the judgment declared a statute of this state invalid, the appeal was taken directly to our court pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)).

Before we reach the merits of Illinois Bell’s appeal, a threshold jurisdictional issue must be addressed. The record shows that Illinois Bell filed its notice of appeal before the circuit court had the opportunity to consider plaintiffs’ request that the Commission be ordered to reinstate the proceedings abated by section 13–502.5. There is no indication that plaintiffs intended to abandon that request. It therefore appears to remain pending and unresolved.

The existence of that unresolved claim is problematic because to trigger direct review under Rule 302(a), it is not enough that the circuit court declared a statute invalid. The court must also have entered final judgment in the case. A final judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit. A judgment is final if it determines the litigation on the merits so that, if affirmed, nothing remains for the trial court to do but to proceed with its execution. 
Flores v. Dugan
, 91 Ill. 2d 108, 112 (1982).

The judgment here does not satisfy that test. The court’s order did not terminate the litigation. As just indicated, the question of whether the Commission should be ordered to reinstate the abated administrative proceedings remains pending. Resolution of that question involves substantive legal and factual issues beyond those attendant to plaintiffs’ claim for declaratory relief. If we were to affirm, the circuit court would therefore have more to do than simply undertake the administrative and ministerial responsibilities associated with execution of a judgment.

Having said that, we also note that plaintiffs’ unresolved claim for affirmative relief against the Commission has little, if any, practical significance. For reasons plaintiffs have not addressed, they did not name and have never attempted to make the Commission a defendant in these proceedings, nor have they joined any agents, employees or anyone else in active concert or participation with the Commission. As a result, no injunction or restraining order issued by the circuit court in this case would be binding on the Commission. See 735 ILCS 5/11–101 (West 2002). Any attempt to compel the Commission to take particular action with respect to administrative proceedings involving Illinois Bell would have to come in a separate action. Accordingly, the ultimate disposition of this particular case is unlikely to be any different even if we were to affirm.

Under these circumstances, dismissing Illinois Bell’s appeal for failure to comply with Rule 302(a) would serve no purpose other than to delay resolution of the pivotal issue in this case, namely, whether the circuit court erred in declaring section 13–502.5 unconstitutional. Our court has jurisdiction to permit direct appeals from other than final judgments, and where the order appealed from rests on a finding of a statute’s unconstitutionality, we have assumed jurisdiction under Rule 302(a), notwithstanding the finality requirement. 
Desnick v. Department of Professional Regulation
, 171 Ill. 2d 510, 516 (1996). Based on these considerations, we shall proceed with our review of this case.

Because Illinois Bell’s appeal arises from an order granting summary judgment, our review is 
de novo
.
 Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.
, 215 Ill. 2d 121, 128 (2005). 
De novo 
review is also appropriate because the order from which the appeal is taken declared a statute unconstitutional. See 
Arvia v. Madigan
, 209 Ill. 2d 520, 536 (2004).

In undertaking our review, we begin with the well-settled principle that all statutes are presumed to be constitutional. The party challenging the constitutionality of a statute has the burden of rebutting the presumption of validity and clearly establishing a constitutional violation. 
Village of Chatham v. County of Sangamon
, 216 Ill. 2d 402, 417 (2005). Our court has a duty to uphold the constitutionality of a statute if it is reasonably possible to do so. 
Village of Lake Villa v. Stokovich
, 211 Ill. 2d 106, 122 (2004).

On this appeal Illinois Bell first takes issue with the circuit court’s determination that section 13–502.5 of the Universal Telephone Service Protection Law violates the special legislation clause of the Illinois Constitution. That provision states:

“The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination.” Ill. Const. 1970, art. IV, §13.

The meaning of this provision was recently taken up by our court in 
Crusius v. Illinois Gaming Board
, 216 Ill. 2d 315 (2005). We held in that case that the special legislation clause prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated. While the legislature has broad discretion to make statutory classifications, the special legislation clause prevents it from making classifications that arbitrarily discriminate in favor of a select group. Our inquiry into special legislation issues is therefore twofold. First, we must determine whether the statutory classification at issue discriminates in favor of a select group. If it does, we must then consider whether the classification is arbitrary. 
Crusius
, 216 Ill. 2d at 325.

In support of the circuit court’s judgment, plaintiffs argue here, as they did in the court below, that section 13–502.5 cannot pass special legislation scrutiny because Illinois Bell is the only entity to benefit from its provisions. This argument is without merit. It is true that Illinois Bell was the only telecommunications carrier involved in the type of Commission proceedings mentioned in subsections (a), (d) and (e) of the legislation (220 ILCS 5/13–502.5(a), (d), (e) (West 2002)) at the time the legislation was enacted as well as being the only telecommunications carrier then subject to so-called “alternative regulation” within the meaning of sections 13–502.5 (b) and (c) of the statute (220 ILCS 5/13–502.5(b), (c) (West 2002)). The mere fact that a law may affect only a single entity does not, however, render the law invalid under the special legislation clause. See, 
e.g.
, 
Crusius
, 216 Ill. 2d 315 (statute affecting single river boat gambling licensee upheld against special legislation challenge); 
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357 (1985) (rejecting constitutional challenge to validity of statutes that applied only to Wrigley Field). Likewise, laws will not be regarded as improper special legislation merely because they affect only one class of entities and not another. See
 Kaufman, Litwin & Feinstein v. Edgar
, 301 Ill. App. 3d 826, 838 (1998). To contravene article IV, section 13, of our constitution (Ill. Const. 1970, art. IV, §13), the statute must confer on a person, entity, or class of persons or entities a special benefit or exclusive privilege that is denied to others who are similarly situated. See 
In re Marriage of Blaisdell
, 142 Ill. App. 3d 1034, 1043 (1986).

Section 13–502.5 terminated administrative proceedings pending against Illinois Bell and declared that certain of its services would be classified as competitive, enabling Illinois Bell to increase rates for those services. At the same time, however, the statute required the company to refund $90 million to certain of its customers and to pay an additional $30 million into “digital divide elimination” funds established by statute. Whether this action can be construed as conferring a benefit or privilege on Illinois Bell is vigorously contested by the parties. We need not resolve that question, for even if Illinois Bell’s position improved as a result of the legislation, the advantages received by Illinois Bell were not denied to others who were similarly situated. They could not have been, for there were no other telecommunications carriers whose situation was similar to Illinois Bell’s. As we have just observed, Illinois Bell was the only telecommunications carrier involved in the type of Commission proceedings mentioned in subsections (a), (d) and (e) of the legislation (220 ILCS 5/13–502.5(a), (d), (e) (West 2002)) at the time the legislation was enacted and was the only telecommunications carrier then subject to so-called “alternative regulation” within the meaning of subsections (b) and (c) of the statute (220 ILCS 5/13–502.5(b), (c) (West 2002)).

If any telecommunications carrier believed that section 13–502.5 afforded Illinois Bell an advantage it was denied, there is no evidence of it in the record before us. Plaintiffs’ arguments focus instead on the harm consumers would suffer under the new law. Consumers, however, are not similarly situated to the telecommunications carriers from which they purchase services. Accordingly, their harm is not relevant to the question of the law’s discriminatory effect.

By its terms, article IV, section 13, of our constitution (Ill. Const. 1970, art. IV, §13) only prohibits passage of a special law when “a general law is or can be made applicable.” Where, as here, an entity is uniquely situated, nothing in article IV, section 13, or any other part of our constitution bars the General Assembly from enacting a law tailored to address the conditions presented by that unique situation. See 
County of Bureau v. Thompson
, 139 Ill. 2d 323, 345-46 (1990). Because no other carrier was shown to be similarly situated to Illinois Bell, section 13–502.5 cannot be said to have discriminated in favor of a select group. 

Even if that were not the case and section 13–502.5 did discriminate in favor of Illinois Bell, plaintiffs’ special legislation challenge could not succeed. The special legislation clause does not prohibit all classifications. As already discussed, it only forbids legislative classifications that are arbitrary. 
In re Petition of the Village of Vernon Hills
, 168 Ill. 2d 117, 122 (1995). In determining whether a statute violates this standard, courts generally apply the same standards applicable to challenges brought under the equal protection clause of our constitution (Ill. Const. 1970, art. I, §2). Where, as here, the statute under consideration does not affect a fundamental right or involve a suspect classification, we review it under the deferential rational basis test. Under this test, the statute is constitutional if the classification it establishes is rationally related to a legitimate state interest. 
Crusius
, 216 Ill. 2d at 325. If any set of facts can be reasonably conceived that justify distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may enact laws applicable only to those persons or objects. 
In re Petition of the Village of Vernon Hills
, 168 Ill. 2d at 122.

The Universal Telephone Service Protection Law is premised on a recognition by the General Assembly of the changing nature of the telecommunications industry (220 ILCS 5/13–103(e) (West 2002)) and a legislative determination that

“consistent with the protection of consumers of telecommunications services and the furtherance of other public interest goals, competition in all telecommunications service markets should be pursued as a substitute for regulation in determining the variety, quality and price of telecommunications services and that the economic burdens of regulation should be reduced to the extent possible consistent with the furtherance of market competition and protection of the public interest[.]” 220 ILCS 5/13–103(b) (West 2002).

A fundamental problem in attaining these objectives is that the telephone industry in Illinois has long been dominated by Illinois Bell. Illinois Bell owned much of the state’s telecommunications infrastructure and operated what was essentially a regulated monopoly of the telephone business. In this regard Illinois Bell stands alone from all other telecommunications providers operating here.

Under the federal Telecommunications Act of 1996 (47 U.S.C. §251 (2000)), telecommunications carriers that provide local telephone exchange services, as Illinois Bell does, are required to provide access to their networks on rates, terms and conditions that are just, reasonable and nondiscriminatory. Promulgation of this law and other factors have placed enormous pressure on Illinois Bell from other carriers anxious to compete against it. In response, Illinois Bell has been engaged in an ongoing effort to sustain its operations by securing the highest rates for its services that state regulations and the market place would permit.

By the time the General Assembly amended the Universal Telephone Service Protection Law to include section 13–502.5, Illinois Bell had been trying for more than five years to successfully reclassify certain services it provided to business customers from noncompetitive to competitive in order to facilitate price changes for those services. One effort, begun in 1995, was rejected by the Commission in a decision subsequently upheld on administrative review. See 
Illinois Bell Telephone Co. v. Illinois Commerce Comm’n
, 282 Ill. App. 3d 672 (1996). Another effort, initiated in 1998, culminated in the Commission proceedings that were ultimately abated by section 13–502.5.

Through section 13–502.5, the General Assembly was able to resolve the reclassification dispute in a way that permits Illinois Bell to increase the rates it charges, helping to ensure the viability of its networks and their continued availability to its competitors, while at the same time reducing future economic burdens of regulation and providing monetary relief to the company’s business customers. This solution was the product of 18 months of bipartisan cooperation and was supported, according to the materials before us, by groups as diverse as the Illinois Manufacturers Association and the Citizens Utility Board. In purpose and design, it appears fully consistent with the objectives of the Universal Telephone Service Protection Law.

Plaintiffs protest that section 13–502.5 is ill-conceived and will ultimately undermine the goals of the Universal Telephone Service Protection Law by forcing consumers to pay higher rates and perpetuating Illinois Bell’s advantages in the marketplace to the detriment of its competitors. Competition is not instantly created by legislative fiat, they argue, and a monopoly must be dismantled systematically as part of a continuous and monitored process. Such determinations, however, are not for us to make. Whether a statute is wise or whether it is the best means to achieve the desired result are matters left to the legislature, not the courts. 
Crusius
, 216 Ill. 2d at 332, quoting 
Arangold Corp. v. Zehnder
, 204 Ill. 2d 142, 147 (2003). The judgments made by the legislature in crafting a statute are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. 
People ex rel. Lumpkin v. Cassidy
, 184 Ill. 2d 117, 124 (1998). The legislature has broad latitude and discretion in drawing statutory classifications to benefit the general welfare. A statute will be held unconstitutional as special legislation only if it was enacted for reasons totally unrelated to the pursuit of a legitimate state goal. 
Bilyk v. Chicago Transit Authority
, 125 Ill. 2d 230, 236 (1988). That is not the case here. The classification established by section 13–502.5 is rationally related to a legitimate state interest. Plaintiffs have therefore failed to meet their burden of clearly establishing that the statute violated the prohibition against special legislation.

In addition to raising a special legislation challenge to section 13–502.5, plaintiffs contend, and the trial court held, that the statute denied them equal protection of the law in violation of article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). The equal protection guarantee and the special legislation proscription of our constitution are generally judged by the same standard. 
Nevitt v. Langfelder
, 157 Ill. 2d 116, 125 (1993), quoting 
Chicago National League Ball Club, Inc.
, 108 Ill. 2d at 368. Plaintiffs have advanced no separate or additional arguments that would warrant treating their equal protection and special legislation claims differently in this case. Our determination that section 13–502.5 is not unconstitutional under the special legislation provision therefore requires us to likewise conclude that the statute did not violate plaintiffs’ right to equal protection.

The sole remaining basis for the circuit court’s judgment is that section 13–502.5 denied plaintiffs due process of law under article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). The gravamen of plaintiffs’ claim is that due process considerations entitled them to have the Commission resolve the questions of whether Illinois Bell acted improperly when it reclassified its services as competitive and, if so, whether the company should be required to issue refunds to the affected customers. In plaintiffs’ view, the legislature had no right to abate the Commission proceedings and settle the question of refunds through statutory enactment.

As Illinois Bell has correctly observed, there is no due process right to due process in the abstract. In undertaking any due process analysis, one must first ascertain that a protected interest has been interfered with by the state. Then and only then does one consider what process is due. If no protected interest is present, due process protections are not triggered. See 
Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Board
, 308 Ill. App. 3d 529, 539 (1999).

The due process protections of our constitution pertain to deprivations of life, liberty or property. No deprivation of life or liberty is involved in this case. Accordingly, plaintiffs may prevail only if they can establish that enactment of section 13–502.5 deprived them of some property right. No such showing has been made.

The power to regulate rates of a public utility is fixed in the General Assembly. When exercised, it is as an act of sovereignty performed in the interest of protecting the lives, health, comfort and general welfare of the public. 
Sprague v. Biggs
, 390 Ill. 537, 549 (1945). Through the Public Utilities Act (220 ILCS 5/1–101 
et seq.
 (West 2002)), the legislature has established a comprehensive mechanism for undertaking that regulation. As with any statutory scheme, the legislature has an ongoing right to amend the Act when it sees fit to do so. Because of this power to amend, plaintiffs can claim no right in the mere continuance of the law. 
Dardeen v. Heartland Manor, Inc.
, 186 Ill. 2d 291, 300 (1999).

The presumption is that laws do not create vested rights, but merely declare a policy to be pursued until the law ordains otherwise. The party asserting that a statute creates a vested right bears the burden of overcoming this presumption. See 
People ex rel. Sklodowski v. State of Illinois
, 182 Ill. 2d 220, 231-32 (1998). To satisfy that burden, a plaintiff must show more than a unilateral expectation that he or she will receive benefits under the law. A legitimate claim of entitlement to those benefits must be demonstrated. 
Polyvend, Inc. v. Puckorius
, 77 Ill. 2d 287, 294 (1979).

The case before us does not involve a statutorily created private right of action. See, 
e.g.
, 
Bradford v. Soto
, 159 Ill. App. 3d 668, 672-73 (1987). The proceeding abated by section 13–502.5 was a regulatory enforcement matter. Plaintiffs were not parties to that proceeding and had no established, definite or ascertainable right to any monetary relief from Illinois Bell. They merely hoped to get back some of the money they had paid for telephone service in the event the Commission ultimately agreed with the hearing examiners, determined that Illinois Bell had acted improperly, and ordered it to make refunds to its customers. Such expectations clearly do not rise to the level of a legitimate claim of entitlement to benefits under the prior law. Plaintiffs therefore failed to establish that they had a vested property right necessary to support their due process claim.

For the foregoing reasons, the circuit court erred in granting summary judgment in favor of plaintiffs and against Illinois Bell. The judgment of the circuit court is therefore reversed, and this cause is remanded to the circuit court for further proceedings consistent with our opinion.

Reversed and remanded.

FOOTNOTES
1:     
1
Public Act 94–76, effective June 24, 2005, subsequently extended the statute’s life an additional two years. It is now scheduled to be repealed effective July 1, 2007.

2:     
2
The complaint’s prayer for relief asked that action be taken against Public Act 92–22 generally, but it is clear from the pleadings and subsequent litigation that plaintiffs’ grievance concerns only that portion of Public Act 92–22 which added section 13–502.5 to the Universal Telephone Service Protection Law. Plaintiffs’ complaint also included a request that a prior administrative proceeding be “remanded” to the Commission. As Illinois Bell correctly pointed out in the trial court, however, there were no proceedings then before the court subject to remand.